**Eddie Lee WRIGHT**

v.

**The STATE of Texas, Appellee.**

No. 1234–91.

Court of Criminal Appeals of Texas, En Banc.

June 24, 1992.

Allen C. Isbell, on appeal only, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty. and Linda A. West and Denise Dryer, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

OVERSTREET, Judge.

Appellant was charged by indictment with the offense of possession of cocaine in an amount less than 28 grams, alleged to have been committed on or about December 10, 1989. On April 3, 1990 in the 232nd District Court of Harris County, Texas, appellant was found guilty by a jury. On April 5, 1990, appellant was sentenced by the jury to 50 years confinement in the Texas Department of Criminal Justice, Institutional Division. The conviction/sentence was affirmed by the First Court of Appeals. We granted two of appellant's grounds for review.

## I.

### SUMMARY OF PERTINENT FACTS

The record reflects that appellant was a passenger in a vehicle that was stopped for a traffic violation. He was observed by a police officer hiding something in the back seat. Subsequently a sawed-off .12 gauge pump shotgun was discovered laying on the floorboard. A crack cocaine pipe was also found partially concealed between the rear seats up against appellant. The officer testified that he had found the pipe "in the exact place where [he had] observed [appellant] reaching." A chemical analysis revealed that the pipe contained cocaine.

## II.

### APPELLANT'S CLAIMS

Appellant's two grounds on which we granted review complain about the trial court's finding on his *Batson* claim and the propriety of the parole law instructions which were included in the jury charge at punishment. The court of appeals held that the record reveals a legitimate, racially neutral reason for striking the veniremember-in-question and that because it found that the trial court's ruling thereon was not clearly erroneous the trial court's findings would not be disturbed on appeal. *Wright v. State*, No. 01–90–00311–CR, 1991 WL 181707 (Tex.App.—Houston [1st Dist.], delivered September 19, 1991). The court of appeals also overruled appellant's claims regarding the inclusion of the parole law jury instructions. *Id.*

## III.

### PAROLE LAW INSTRUCTIONS

■ The punishment jury charge included the parole instructions prescribed by TEX.CODE CRIM.PROC.ANN. art. 37.07, § 4 (Vernon Supp.1990). The record reflects that appellant did timely "object to the parole charge being included in the jury charge, the punishment stage, in that the parole charge denies the defendant a due process right to affix punishment." Appellant's ground for review asks "[w]hether the Court of Appeals is correct in holding

that' the [a]mendment to [TEX. CONST. art. IV, § 11(a) ] cured the [d]ue [p]rocess [i]nfirmities of the mandatory parole law [instructions] ...?" He claims that the re-enacted statute still violates the due course of law provisions of TEX. CONST. art. I, §§ 13, 19.

In *Oakley v. State*, 830 S.W.2d 107 (Tex. Cr.App.1992), we held that Article 37.07, § 4 was properly re-enacted by the Legislature and that the amendment in Article IV, § 11(a) does not violate the due course of law provisions in Article I, §§ 13 and 19. *See also Marks v. State*, 830 S.W.2d 113 (Tex.Cr.App.1992) and *French v. State*, 830 S.W.2d 607 (Tex.Cr.App.1992). Thus the trial court did not err in including the challenged instructions in the punishment jury charge. We therefore overrule appellant's ground for review complaining of such action.

## IV.

### BATSON CLAIM

In the other ground on which we granted review, appellant specifically questions the court of appeals' affirmance of the trial court's finding of no purposeful discrimination in peremptorily striking a prospective juror. Based upon the discussions between the trial court, the prosecutor, and appellant's attorney, and the parties' respective jury strike lists, the record reflects that all eight black veniremembers were challenged and removed from the jury panel.[1] Appellant peremptorily struck one, while three others were removed for cause or by agreement. The remaining four were peremptorily struck by the State.[2] Appellant, noting that the petit jury "panel [was] all white" and that "all blacks [had] been

struck[,]" timely made a *Batson* claim questioning the propriety of the State's use of peremptory strikes.[3]

After appellant asked the prosecutor to "enunciate the reason in the record as to why all the blacks that she struck were struck[,]" the trial court took judicial notice that appellant was black. Then the attorneys and the trial court started listing the blacks that were on the venire panel and the basis for their being struck. It was determined that, as noted above, appellant had peremptorily struck one and that three had been removed for cause or by agreement. The prosecutor then proceeded to detail specific race-neutral reasons for peremptorily striking some of the black veniremembers. She made such an explanation for four of the black veniremembers, including the one that both parties had struck, but failed to include a specific rationale for one of the others which she alone had struck. The trial court found "the prosecutor's explanation as to the reason for each of the strikes against black panelists, and that those reasons [were] free of any racial basis[,]" and "[t]hat they're neutral reasons and that her [the prosecutor's] strikes were made for good and valid reasons and not based on any racial consideration."

The court of appeals stated that it believed "that the omission of a reason for striking [the venireperson in question] was an oversight on the part of all involved." *Wright v. State*, No. 01–90–00311–CR, 1991 WL 181707 (Tex.App.—Houston [1st Dist.], delivered September 19, 1991). Be that as it may, we are faced with a record in which the prosecutor failed to articulate a specific race-neutral reason for peremptorily striking the particular veniremember-in-ques-

---

1. It was agreed by all that appellant is black. In fact, the trial court took judicial notice of that fact.

2. The prosecutor did indicate that she had "used five of [her] challenges on black people." (The record reflects that appellant and the State both struck one of the black veniremembers, resulting in a "double strike.") She then pointed out that she had also "used five of [her] challenges on white people, and ... used all ten of [her] challenges."

3. We observe that the record does not reflect that appellant ever specifically mentioned the case of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). However, based upon the dialogue between the trial court and the attorneys representing appellant and the State, it is clear that all parties involved recognized that appellant was making a claim of improper racially discriminatory use of peremptory strikes. *Trevino v. State*, 815 S.W.2d 592 (Tex.Cr.App.1991).

tion. We observe that after the trial court inquired if there was anything else, the prosecutor added, "No, Your Honor. I exercised my challenges based on what the jurors told me and based upon how I felt they would consider the facts in this case." Thus this generic statement, obviously referring to all of the prosecutor's peremptory strikes, is the only explanation given that can apply to her peremptorily striking the veniremember-in-question.

The court of appeals, after noting the "oversight," looked at the exchange between the veniremember-in-question and the prosecutor during voir dire questioning. *Wright v. State*, No. 01–90–00311–CR, 1991 WL 181707 (Tex.App.—Houston [1st Dist.], delivered September 19, 1991). It then concluded that based upon that exchange, and the prosecutor's general explanation noted above, the record revealed a legitimate racially neutral reason for striking the veniremember-in-question, and found that the trial court's ruling was not clearly erroneous. *Id.*

Appellant questions the propriety of the court of appeals' "reward[ing] a prosecutor's silence" and "bestowing on [such silence] the same force and effect as an articulated neutral explanation related to the particular case to be tried." The State responds that the record does indeed reveal a legitimate racially neutral reason for striking the veniremember-in-question which supported the trial court's finding. The State specifically points out the voir dire exchange relied upon by the court of appeals. During the voir dire questioning, the prosecutor asked the panel if anyone ever knew someone, a close friend or family member, who had had a drug problem that had affected the rest of the family or friendship. The veniremember in question responded:

> The person that I know is a good friend of my son, which he worked under me and he confessed this to me, that he had this problem. We got him some help and I eventually had to fire him because he was upsetting, you know, the rest of the people.

This is the extent of the questioning of and response by that veniremember which the State avers supports the prosecutor's explanation that she exercised her challenges based on what the jurors had told her and based upon how she felt they would consider the facts in this case.

## V.

### BATSON ANALYSIS

■ Once the defendant establishes his initial prima facie showing of purposeful discrimination in the use of peremptory strikes, the burden shifts to the State to come forward with a race-neutral explanation for expending the peremptory strikes; whereupon the trial court will then have the duty to determine if the defendant has established purposeful discrimination. *Batson v. Kentucky*, 476 U.S. 79, 97–98, 106 S.Ct. 1712, 1723–1724, 90 L.Ed.2d 69, 88 (1986); *Brooks v. State*, 802 S.W.2d 692, 695 (Tex.Cr.App.1991). There is no suggestion that appellant failed to establish such a prima facie showing, particularly in light of the fact that the State proceeded to present explanations for its strikes.

■ Our standard of review of such a *Batson* claim is whether the trial court's ruling is "clearly erroneous." *Williams v. State*, 804 S.W.2d 95, 101 (Tex.Cr.App. 1991) (Opinion on Remand), *cert. denied*, —— U.S. ——, 111 S.Ct. 2875, 115 L.Ed.2d 1038 (1991); *Whitsey v. State*, 796 S.W.2d 707, 727 (Tex.Cr.App.1989) (Opinion on Rehearing). To determine whether the factfinder's decision is "clearly erroneous," we look to the record to see if we are left with the definite and firm conviction that a mistake has been committed. *Hill v. State*, 827 S.W.2d 860 (Tex.Cr.App.1992). We must examine the record to determine whether the race neutral explanation provided by the State is supported by the record; i.e., in light of the record, has the State come forward with sufficient neutral explanation for its challenge of the veniremember-in-question. *Williams*, 804 S.W.2d at 101.

■ As noted previously, the prosecutor failed to articulate any specific reason,

race-neutral or otherwise, for striking the veniremember-in-question. The prosecutor did make the generic statement that she had exercised her challenges based on what the prospective jurors had told her and based upon how she felt they would consider the facts in this case. As we stated earlier, the only portion of the record which the State cites in support of its claim that the questioned jury strike was based upon racially neutral reasons was the exchange during voir dire questioning when the veniremember-in-question indicated that he had had a prior experience with a friend of his son's whom he had to fire because of a drug problem. This is the totality of support for the State's claim that the strike was not racially motivated. The State does assert that the veniremember's voir dire response supports the prosecutor's explanation in that "[the veniremember] had a relationship with a drug user, a good friend of his son" while this case involved a cocaine possession charge with two similar prior convictions alleged for enhancement. However, this colloquy occurred during the voir dire examination and was not offered during the *Batson* hearing as a race neutral explanation for the preemptory strike for the veniremen in question.

■ Based upon our review under the appropriate standard, we are indeed left with the definite and firm conviction that *Batson* error has been shown. We thus conclude that the trial court's finding that the prosecutor's peremptory strike of the veniremember-in-question was "not based on any racial consideration[,]" is clearly erroneous. We therefore sustain appellant's ground for review claiming *Batson* error.[4] Accordingly, the judgment of the court of appeals is reversed and the cause remanded to the trial court.

BENAVIDES, Judge, concurring.

I concur in the judgment of the Court and join the bulk of its opinion, but I think a few things require elaboration. In the first place, as regards the *Batson* analysis, I agree that the trial judge is not obliged to search the record of jury selection for racially neutral explanations. Undoubtedly, it is the prosecutor's obligation to tender such explanations at the time first called upon to do so in the trial court. It is no sufficient substitute to let her offer them at a later time, certainly not on appeal or discretionary review. And it follows that any subsequent scrutiny by an appellate court of the *voir dire* process must necessarily be for the limited purpose of determining whether the prosecutor's tendered explanations can be refuted or corroborated, and not as a surrogate for the explanations themselves. *See Young v. State*, 826 S.W.2d 141 (Tex.Crim.App.1992). I do not dispute that the Court of Appeals erred to hold otherwise and that its judgment should be reversed on this basis. But I join this Court's opinion only insofar as its holding is limited to that rationale.

I do not subscribe to those parts of the opinion which discuss the issue of procedural default in the trial court. On direct appeal, the State contended that Appellant had forfeited his right to complain of the prosecuting attorney's failure to proffer a racially neutral explanation for striking veniremember Elenor Green. It seems that, after first identifying the black veniremembers against whom the State had exercised peremptory challenges, including Mr. Green, and finding reason to suspect racial bias in those challenges, the trial judge required the State to make known the actual reasons for its strikes. The prosecutor promptly did so with respect to four of the prospective jurors but omitted any explanation for its challenge to Mr. Green. The trial judge then inquired, "Is that it? Is that all of the them?", to which Appellant's attorney replied, "That's all, Judge."

4. Like the Court of Appeals, we reject the State's contention that appellant somehow abandoned his claim at the end of the *Batson* hearing. We do not view the remarks by appellant's attorney stating "That's all, Judge" in response to a question from the trial court about the panel members under discussion, and "Okay" after the trial court had denied his claim to be any such abandonment. The other language cited by the State also does not indicate any intent to abandon the *Batson* claim or to agree that the State's explanations were sufficient. Clearly, appellant made said claim, argued in favor of it, and pursued it to an adverse ruling.

It was the State's position in the Court of Appeals that this remark by defense counsel effectively waived Appellant's objection to the exclusion of veniremember Green. Although the lower court did not fully dispose of this contention, it did express "doubt that appellant's counsel's comment ... was meant as a statement that he was abandoning his challenge." The Court of Appeals then proceeded to decide the issue erroneously on another basis, for which error we here reverse its judgment. Unfortunately, this Court also recites that, "[l]ike the Court of Appeals, we reject the State's contention that appellant somehow abandoned his claim at the end of the *Batson* hearing." At 605 n. 4.

I am disturbed by the posture of this case because it seems perverse to me that we should fault the trial judge here for an omission which Appellant evidently ratified. It is reasonably clear from the record that failure of the prosecuting attorney to offer a racially neutral explanation for her peremptory challenge of Elenor Green was the result of a general confusion, shared by trial judge and counsel alike, and promoted by the mistaken belief of Appellant's attorney that an explanation had actually been given by the prosecutor for each prospective black juror against whom she exercised a peremptory challenge. It is also clear to me that defense counsel's statement "that's all" referred to all of the jurors for whom an explanation was required and not to all of the explanations for the strikes, as that would be a matter only known to the prosecutor. Under these circumstances, I would be disinclined to fault the trial judge for ruling against Appellant unless it could fairly be said in context that the judge knew his ruling applied to Elenor Green as well as to other challenged veniremembers. It is the responsibility of every objecting party to ensure that his wishes are clearly communicated to the trial judge, and he must therefore bear responsibility for any vagueness or ambiguity in his request for relief. Thus, the lower court's observation, approved now by this Court, that Appellant's counsel did not mean to abandon his objection to the exclusion of veniremember Green is the wrong basis

upon which to decide whether he in fact abandoned it. It is not so much a question of what Appellant's attorney meant as of how he was understood and of whether it was reasonable for the trial judge to understand him that way. *See Zillender v. State*, 557 S.W.2d 515, 517 (Tex.Crim.App. 1977). Indeed, had this issue been brought to us on discretionary review, it would likely have been my preference to reverse the Court of Appeals' judgment and remand for reconsideration of the State's procedural default claim in light of a more orthodox forfeiture rule. But because the State did not complain in a cross petition for discretionary review about the lower court's disposition of the procedural default issue, that issue is not before us in this case. *Haughton v. State*, 805 S.W.2d 405, 407 n. 1 (Tex.Crim.App.1990); *Hass v. State*, 790 S.W.2d 609, 610 n. 1 (Tex.Crim.App.1990); *Wilson v. State*, 772 S.W.2d 118, 120 n. 3 (Tex.Crim.App.1989). *See also Keith v. State*, 782 S.W.2d 861, 863 n. 4 (Tex.Crim. App.1989). Accordingly, this Court's remarks about procedural default in the present opinion should be viewed by bench and bar as merely gratuitous and, therefore, unnecessary to a fair disposition of the issues actually presented. Certainly, I do not subscribe to them myself, and would be unwilling to join the Court's opinion in this case except that I consider them to be *obiter dicta*.

McCORMICK, P.J. and WHITE, J., join.