Carlos SALINAS, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 13–93–058–CR, 13–93–059–CR.

Court of Appeals of Texas, Corpus Christi.

Oct. 13, 1994.

Rehearing Overruled Nov. 17, 1994.

Joseph A. Connors, III, McAllen, for appellant.

Theodore C. Hake, Asst. Crim. Dist. Atty., Rene Guerra, Dist. & County Atty., Hidalgo County Courthouse, Edinburg, for appellee.

Before SEERDEN, C.J., and KENNEDY and DORSEY, JJ.

## OPINION

KENNEDY, Justice.

Carlos Salinas was charged in a three-count indictment with the murder of Jesus

Lopez, the attempted murder of Firmato Rodriguez, and the aggravated assault of Firmato Rodriguez. The jury found appellant guilty of murder and aggravated assault, found enhancement paragraphs true, and assessed punishment at confinement in prison for forty-five years and twenty-five years respectively.

Appellant raises seven points of error, contending that jury selection was racially biased, that the prosecution knowingly used perjured testimony, that the court should have instructed the jury on lesser included offenses, that the evidence is insufficient to support the verdict, and that the enhancement paragraphs were not properly before the jury. Some of these points were raised in only one of the cases; we will note when that occurs. We find error in the punishment phase only and reverse and remand the causes to the trial court. *See* Tex.Code Crim.Proc.Ann. art. 44.29(b) (Vernon Supp. 1994).

Appellant contends in points five and six that the trial court erred by not finding that the State used its peremptory strikes against Hispanic jurors in a racially discriminatory manner. By point five, appellant contends that the court erred in denying his motion to dismiss the jury array under Tex.Code Crim. Proc.Ann. art. 35.261 (Vernon 1989). By point six, appellant contends that the court erred in not presuming race was the basis for the State's strikes as the State failed to explain some of its strikes and gave pretextual explanations for some of its other strikes. *See* U.S. Const. Amend. XIV; *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

After voir dire questioning, appellant raised a *Batson* complaint about the State's use of its strikes. Outside the venire panel's presence, Judge Homer Salinas held a hearing on appellant's contention. Appellant stated that he was Mexican–American. After establishing on the record which members the State peremptorily removed, appellant's counsel stated that he believed he had made a *prima facie* case based on the State "striking that many Hispanic surnamed jurors." [1] Judge Salinas then stated, "The State has got to prove that they did not strike based upon race alone." Thereafter, defense counsel questioned the prosecutors, Luis Martinez and Jaime Palacios, about their strikes. Appellant inquired about some, but not all, of the strikes. The State offered reasons for those veniremembers appellant inquired about but did not offer reasons for exercising its strikes on two veniremembers (Flores and Torres) who were not subjects of appellant's inquiry. Prosecutor Martinez stated that all the remaining jurors were Hispanic and being in deep South Texas where the vast majority of veniremembers are Hispanic, "[I]t's almost a near impossibility not to strike ten Hispanics." [2] Prosecutors Martinez and Palacios stated that none of the strikes were based on race. Judge Salinas then directed the defense to present evidence of relevant facts to show discriminatory motive. Appellant presented no additional evidence but argued that the State's reasons for striking veniremembers Vega and Borrego were incredible. At the end of the hearing, Judge Salinas stated that of the original venire of forty members, thirty-four members were Hispanic and thirty-two had identifiable Spanish surnames. Judge Salinas found that the State did not create error in exercising its strikes. Judge Salinas then impaneled jurors with the last names Rendon, Hernandez, Valdez, Gonzalez, Ramirez, Gonzalez, Aguirre, Gonzalez, Valle, Rangel, Skloss, and Chapa, with an alternate named Mulkey. [3]

1. The State used nine of ten strikes on persons with Hispanic surnames. The State's other strike was used on veniremember Judith Lawson. Prosecutor Luis Martinez offered a specific race-neutral explanation for that strike because he thought Lawson "might be Hispanic." It thus appears that the prosecutor used all of his strikes on members with Hispanic surnames or those he thought "might be Hispanic."

2. The initial jury list apparently included all Hispanics. At the *Batson* hearing it was discovered that the Clerk had inadvertently passed over juror Carol Skloss. The corrected jury list included Skloss and she served on appellant's jury. Thus, the final jury included eleven Hispanic surnamed jurors and Skloss.

3. The venire panel included: 1. Leonard Munoz, 2. Sylvester Zamora, 3. Yolanda Garcia, 4. Jose Rendon, 5. Juan Hernandez, 6. Eligio Flores, 7.

Under both *Batson* and Texas law the defendant has the burden of asserting a *prima facie* case of racial motivation for the strikes. *Id.* at 106, 106 S.Ct. at 1728; Tex. Code Crim.Proc.Ann. art. 35.261 (Vernon 1989). Once the defendant establishes a *prima facie* case, the State must articulate race-neutral explanations for the questioned strikes; the defendant may then rebut these explanations. The defendant carries the burden of persuasion under both the federal case law and the state statute. *Batson*, 476 U.S. at 106, 106 S.Ct. at 1728; Tex.Code Crim. Proc.Ann. art. 35.261.

The State asserts that appellant never made a *prima facie* case. Appellant asserts that the establishment of a *prima facie* case is a moot issue because the State did not object to offering reasons for its strikes and because the trial court ruled on the ultimate question of intentional discrimination.

In *Chambers v. State*, 866 S.W.2d 9, 23 (Tex.Crim.App.1993), *cert. denied,* — U.S. ——, 114 S.Ct. 1871, 128 L.Ed.2d 491 (1994), the Court of Criminal Appeals held that the State cannot claim the lack of a *prima facie* case if it did not object at trial when asked to offer explanations for its strikes. *See Hill v. State*, 827 S.W.2d 860, 862–65 (Tex.Crim.App. 1992), *cert. denied,* — U.S. ——, 113 S.Ct. 297, 121 L.Ed.2d 221 (1992) (issue of the existence of the *prima facie* case moot where prosecutor offers reasons without prompting from the court). In the case at bar, the defense complained about the State's strikes. The trial court stated that the State had to explain its strikes, and the State responded to appellant's questions without objecting. We cannot agree that the trial court never determined that a *prima facie* case of racial discrimination was shown. The trial court's ruling that the State had to prove "they did

not strike on race alone" indicates to us that the trial court found a *prima facie* case. Even if the court did not, the State did not object to giving explanations. The *prima facie* issue is moot. *Chambers v. State*, 866 S.W.2d at 23.

Appellant argues that reversal is required because once the State chose to give reasons (and thereby moot the *prima facie* issue), it failed to give any reasons for striking jurors Flores and Torres and gave pretextual reasons for striking veniremembers Munoz, Lawson, Vega, Borrego, and Ramirez. We first address the five veniremembers for which the State offered explanations.

The State removed (1) Munoz because he wavered in some of his answers; (2) Lawson because she had spent a lot time in Panama and might not understand the legal principles at issue; (3) Vega because the prosecutor could not get much information from him; (4) Borrego because he was from the same general area where the offense was committed and one of the prosecutors thought he had a business in the vicinity of Sullivan City; and (5) Ramirez because he was a janitor at P.S.J.A. and the State had recently prosecuted a P.S.J.A. janitor for murder.

Our review of the record supports the trial court's finding that the State did not strike these veniremembers on racial grounds. Munoz gave conflicting answers to the same question. Such conduct could be interpreted as "wavering." Juror Lawson stated she had lived in Panama, and she testified that she would have to listen to the evidence and that it would be difficult for her to decide. With regard to Vega's occupation, the record shows neither party offered the juror information cards into evidence and the State did not question Vega about his occupation.[4]

Beatrice Valdez, 8. Idalia Gonzalez, 9. Ana Martinez, 10. Ruben Gonzalez, 11. Noelia Gonzalez, 12. Peter Brooke, 13. Hermelinda Aguirre, 14. Maria Romo, 15. Judith Lawson, 16. Irma Vair, 17. Ricardo De La Vina, 18. Reynaldo Vega, 19. Daniel Torres, 20. Fidel Borrego, 21. Paul Taube, 22. Daniel Ramirez, 23. Gloria Gonzalez, 24. Pablo Valle, 25. Maria Martinez, 26. Maria Garcia, 27. Jesus Rangel, 28. Roberto De La Rosa, 29. Pablo Reyes, 30. Robert Murden, 31. Carol Skloss, 32. Roberto Trevino, 33. Virginia Davis, 34. Antonio Garcia, 35.

Manuel Chapa, 36. Arthur Mulkey, 37. Jimmy Jones, 38. Pablo Guevara, 39. Maria Flores, 40. Margarita Escamilla.

Veniremembers 3, 12, 26, 29, 34, and 37 were removed for cause. The State used peremptory strikes on 1, 6, 11, 14, 15, 17, 18, 19, 20, and 22.

4. Vega's juror card is contained in the appellant transcript. Although not introduced into evidence, the State referred to it at the *Batson* hearing. We will consider it on appeal. *See*

While, the voir dire questioning does not reveal that Borrego had a business near the site of the offense, the record shows that one of the two prosecutors thought Borrego did. The record shows that Ramirez was a custodian at P.S.J.A. Ramirez was not questioned about his views or knowledge of the State's prosecution of another P.S.J.A. custodian.

■ Under *Batson*, the intent to discriminate is a "pure issue of fact, subject to review under a deferential standard." *Vargas v. State*, 838 S.W.2d 552, 554 (Tex.Crim.App. 1992) (citing *Hernandez v. New York*, 500 U.S. 352, 364, 111 S.Ct. 1859, 1869, 114 L.Ed.2d 395 (1991)). On appeal, the standard of review is whether the trial judge's decision was supported by the record so that it was not clearly erroneous. *Id.* For us to conclude that the court's decision was clearly erroneous, we must be left with a "definite and firm conviction that a mistake has been committed." *Id.*

■ The explanations given for the above five veniremembers were race-neutral. Except with respect to Borrego, the validity of the prosecutor's reasons are inferable from the voir dire record or the juror information cards. With respect to Borrego, prosecutor Martinez stated that he based his strike on information from prosecutor Palacios that Borrego had a business in the same general location as the offense and feared he might have some general information that would affect his opinion. Undisputed statements by the attorneys in support of their positions in a *Batson* hearing constitute "valid proof." *Moss v. State*, 877 S.W.2d 895, 899 (Tex.App.—Waco 1994, no pet.) (citing *Emerson v. State*, 820 S.W.2d 802, 804 (Tex.Crim. App.1991)). The prosecutor's ability to understand a juror card, his knowledge of a veniremembers business location, and the State's prior prosecutions involve matters which relate in large part to the credibility of the prosecutor. Even if the prosecutor was mistaken in some of these beliefs, the judge could still conclude that the strike was race-neutral because the prosecutor based his preemptory strike on an honest belief. *Jack v. State*, 867 S.W.2d 942, 947 (Tex.App.—

*Cornish v. State*, 848 S.W.2d 144, 145 (Tex.Crim.

Beaumont 1993, no pet.). The trial court may accept the prosecutor's race-neutral explanations at face value. *Satterwhite v. State*, 858 S.W.2d 412, 424 (Tex.Crim.App. 1993). Absent some other evidence which rebuts the State's race-neutral explanation, we will not disturb the trial court's finding that the State's explanation is legitimate. *Moss*, 877 S.W.2d at 899. Applying the "clear error standard of review," we find no error in the trial court's rulings.

■ We now turn to the two veniremembers which the State did not offer any reasons for striking. In *Wright v. State*, 832 S.W.2d 601, 604–05 (Tex.Crim.App.1992), the Court of Criminal Appeals reaffirmed that once the defendant establishes a *prima facie* showing of purposeful discrimination, the State must come forward with race-neutral explanations. *Wright* further held that the lack of an explanation, even if based on the State's oversight, presented a failure in the State's burden and constituted reversible error. *Wright*, 832 S.W.2d at 603–05.

While we are reluctant to distinguish *Wright*, we cannot find reversible error in this record. In *Wright*, the State removed all the black veniremembers remaining on the panel, leaving an all-white panel. The present case is factually distinguishable. In the case at bar, thirty-four members of the original panel were Hispanic. Eleven of the twelve impaneled jurors had Hispanic surnames. Moreover, discounting members removed for cause, the first eighteen eligible members were Hispanic, and twenty-four of the first twenty-five eligible members were Hispanic. The State's attorneys and the trial judge who ruled on appellant's complaint were Hispanic.

*Batson* was designed to protect individual defendants from discrimination in the selection of jurors, to protect the excluded jurors, and to protect the community at large. *Powers v. Ohio*, 499 U.S. 400, 405–07, 111 S.Ct. 1364, 1368, 113 L.Ed.2d 411 (1991). The facts of this case do not suggest that rights of the defendant, the excluded jurors or the community at large were violated.

App.1993).

We recognize the apparent conflict between our above holding (*prima facie* case of discrimination exists because the State failed to object to giving race-neutral reasons for its strikes) and this holding (record does not demonstrate purposeful discrimination). We do not believe an actual conflict exists, however. The above holding is based on *Chambers* and resolves appellant's complaints within the context of *Batson* and its progeny. Our holding here is simply that despite the State's failure to explain its removal of veniremembers Flores and Torres, the trial court's conclusion that the State's use of its strikes was not race-based is supportable based on other circumstances, i.e., the overwhelming number of Hispanics on the venire and the petit jury. In addition, the prosecutors gave race-neutral explanations for the strikes which appellant questioned.

■ We recognize that the prosecutors did not comply with *Wright's* procedural requirements. In most cases, such failure would constitute reversible error. Our holding is peculiar to the facts of this case. While it would have been better practice for the State to have explained all of its strikes, we find no reversible error in this case.[5] Appellant's fifth and sixth points of error are overruled.

■ By point of error seven, Salinas contends that we must reverse the convictions because the State knowingly used perjured testimony. He bases this contention on an affidavit of one of the witnesses which was filed separate from any motion more than two months after trial and almost two months after the judgment was signed. Despite the dubious preservation of this issue, we address its lack of merit. The witness states in her affidavit that an investigator pressured her to give a statement asserting that she saw critical elements of the crime. She states that the investigator pressured her to testify at trial. She states that she went over the statement before trial and testified based on that statement. She avers that she never saw many of the events that she had said she saw in her statement.

We find that the statement does not show that the prosecution knew that her statement was false or her testimony perjured. Salinas contends that the State was charged with knowledge through the purportedly pressuring investigator. The affidavit states only that the investigator pressured her to give a statement and to testify and that she lied in her statement and at trial. There is no evidence that the State knowingly used perjured testimony to obtain the conviction. We overrule point seven.

■ Salinas contends by points of error two and three that the trial court erred by failing to instruct the jury on lesser-included offenses within the aggravated assault.[6] In determining whether a jury must be instructed on a lesser-included offense, a two-step analysis must be applied. *Royster v. State*, 622 S.W.2d 442, 446 (Tex.Crim.App.1981). The first prong of the test requires that the offense requested to be charged is a lesser included offense of the offense charged. *Ross v. State*, 861 S.W.2d 870, 874 (Tex.Crim. App.1992); *Royster*, 622 S.W.2d at 446. Second, there must be some evidence in the record showing that if the defendant is guilty, he is only guilty of the lesser offense. *Ross*, 861 S.W.2d at 874; *Royster*, 622 S.W.2d at 446.

■ The indictment for aggravated assault alleged that appellant intentionally and knowingly threatened Firmato Rodriguez with imminent bodily injury by the use of a deadly weapon, to wit: a firearm that in the manner of its use and intended use was capable of causing death and serious bodily injury. Appellant requested the trial court to instruct the jury on the offense of terroristic threat. A person commits this offense "if he threatens to commit any offense involving violence to any person or property with intent to: (2) place any person in fear of imminent serious bodily injury." Tex.Penal

---

5. We are aware of *Batiste v. State*, 888 S.W.2d 9 (Tex.Crim.App.1994), in which the Court of Criminal Appeals presumed that *Batson* error is not amenable to a harm analysis. The composition of the *Batiste* jury factually distinguishes that case from this one.

6. These points of error apply only to case No. 13–93–059–CR.

Code Ann. § 22.07(a)(2) (Vernon 1989). Appellant also requested a charge on the offense of reckless conduct. A person commits the offense of reckless conduct if he recklessly engages in conduct that places another in imminent danger of serious bodily injury. TEX. PENAL CODE ANN. § 22.05(a) (Vernon 1989).

The facts show that appellant shot Jesus Lopez outside the Oasis nightclub. Firmato Rodriguez, who worked as a security officer at the club, was inside the club at the time. Some ladies came inside and told Rodriguez someone was being shot. Rodriguez headed outside, with Norma Hernandez right behind him. After they exited the door, Rodriguez told Hernandez to step back, that he would handle the situation. As Rodriguez progressed forward, appellant, pointing a pistol toward Rodriguez, screamed, "You better go back inside, mother-fucker, or I'll shoot." Rodriguez, fearing for his life, ducked under an adjacent van. Appellant fired two shots. Rodriguez stayed under the van until appellant left. Hernandez testified that appellant could have been pointing the gun at her, as she was in the same direction as Rodriguez. An investigating police officer testified that he found a chip, which could have been caused by a bullet, in a block by the club's entrance.

Appellant contends a reckless conduct charge was required, citing *Mullins v. State*, 767 S.W.2d 166, 169–170 (Tex.App.—Houston [1st Dist.] 1988, no pet.) because there was some evidence from which the jury could find that he was guilty only of reckless conduct. Appellant contends that the jury, by selectively considering the testimony, could have found that he was not threatening imminent bodily injury to Rodriguez but was merely recklessly firing a warning shot intending to hit the club's wall after Rodriguez was already under the van. Under this scenario, appellant asserts he would have been guilty only of reckless conduct. We disagree.

In *Mullins*, the defendant was involved in an argument with the complainant. As the complainant approached the defendant from a distance, the defendant told the complainant that if he came any further he would "blow his ass away." Undeterred, the complainant continued forward. The defendant fired one shot, hitting a vacant apartment near the complainant. The Court of Appeals held that despite the defendant's failure to testify, there was some evidence that the defendant was merely recklessly firing a warning shot intended to strike a vacant apartment. The Court held that the trial court should have included an instruction on the lesser included offense of reckless conduct.

*Mullins* appears to be indistinguishable, and, if so, we find it wrongly decided. In the present case and in *Mullins*, there is no evidence that the discharge of the weapon, i.e., the actus reus, was not intentional. To be entitled to a reckless conduct charge, there would have to be evidence that the defendant was only reckless with respect to the circumstances surrounding his conduct or the result of his conduct. In both *Mullins* and the present case, the evidence does not show that the actors intended to do anything other than threaten the complainants.[7] The evidence fails to show that appellant, if guilty, was guilty only of the lesser offense of reckless conduct.

Likewise, we do not find that the evidence shows that appellant, if guilty, is guilty only of making a terroristic threat. Appellant asserts that there is some evidence that appellant only made an oral threat because there is some evidence that Cantu fired the shots at Rodriguez. Appellant does not refer us to any place in the record where the evidence shows that Cantu fired the shots. The State responds that there is no evidence that Cantu fired the gun, and we can find no such evidence. As such, appellant's argument is without factual support and thus without merit. There is no evidence that appellant only threatened to commit a violent offense. The evidence shows that appellant

---

7. In *Mullins*, the Houston Court concludes that the jury could have inferred that the defendant fired a warning shot intended to hit a vacant apartment and so was only reckless. We fail to see the logic of this holding. Inherently, if the defendant fired the shot as a warning, he intended to threaten. Thus, the defendant was not guilty only of the lesser offense.

committed an offense. Appellant's second and third points are overruled.

■ By point four, appellant contends the evidence is insufficient to establish the firearm, in its manner of use and intended use, was capable of causing death or serious bodily injury because the weapon was only used to fire warning shots. The evidence shows that appellant shot one man. When security guard Rodriguez approached, appellant warned him to go back inside or be shot. Appellant then fired in the direction of the guard. We find this evidence sufficient to establish that the firearm was capable of causing death or serious bodily injury. The evidence is sufficient to sustain the conviction. Point four is overruled.

■ By point one, Salinas contends that the court erred by sentencing him on the enhancement issues without reading the enhancement allegations to him or to the jury and without his entering a plea to the enhancement allegations. Enhancement paragraphs must be read to the jury. Tex. Code Crim.Proc.Ann. § 36.01(a)(1) (Vernon Supp.1994); *Warren v. State*, 693 S.W.2d 414, 415 (Tex.Crim.App.1985). We must presume that the defendant was arraigned and that he pled to the charging instrument "unless such matters were made an issue in the court below, or it otherwise affirmatively appears to the contrary from the record." Tex. R.App.P. 80(b). Silence is not an affirmative showing of the failure to read or plead. *See Hazelwood v. State*, 838 S.W.2d 647, 651 (Tex.App.—Corpus Christi 1992, no pet.).

Though the jury charge on punishment recites that the defendant pled "not true" to the enhancement paragraphs, there is no indication that any reading or plea occurred. The defense mentioned this failure for the first time in his jury argument. After the jury was released, the following exchange occurred:

DEFENSE COUNSEL: Judge, If I may as to the sentence I do have an objection to you passing sentence at this time because it is the defense contention that those verdicts, since they use verdict form one and found the two prior allegations, enhancements true that that was an im-

proper conduct by the jury since those issues were never raised in front of the jury because they were never enhancement paragraphs. In count one, Paragraphs 3 and 4 of the indictment were never read to the jury and my client never answered true or not true. So therefore the sentence is void Your Honor. But other than that small legal problem I have no other reasons [why judgment and sentence should not be pronounced].

THE COURT: Yeah. I'm not saying that it's not a small—that it is a small legal problem, but we will proceed with sentence at this time counselor. Of course, I will allow you to make any proper motions at a future date if you so wish like Monday or tomorrow.

The court then proceeded to sentence Salinas.

The proper motions to which the court referred were likely a motion for new trial, a bill of exception, or a motion to arrest judgment. The Court of Criminal Appeals cited these as ways in which to preserve error in cases in which the indictment was not read and defendant has not pled. *Warren*, 693 S.W.2d at 416. That court interpreted the statutory predecessor of appellate rule 80(b) broadly. *Id.* That court held that an appellant preserved error by bringing a similar misstep to the court's attention as follows:

Your Honor, it's come to my knowledge that the enhancement paragraphs were not read to the defendant prior to proceeding on the punishment phase. And for the record we would object to that and ask for a mistrial.

*Id.* Though this objection occurred after the jury was dismissed and was not in the form of any of the three motions listed above as sufficient to preserve error, the court held that the objection and motion presented the issue to the court and had the same effect as a motion for new trial. *Id.* Salinas's attorney's statement quoted above is the equivalent of the statement in *Warren*. His statement distinguishes this case from another of our cases in which the defense failed to call the trial court's attention to the failure to read the indictment. Compare with *Hazelwood*, 838 S.W.2d at 651. Though the state-

ment here is far from the ideal procedure, it sufficiently raised the issue before the trial court. Compare with *Warren*, 693 S.W.2d at 416.[8] We sustain point one.

We reverse the judgments as to the punishment and remand the causes to the trial court.

---

**8.** The Houston court advocated the use of a harm analysis in addition to the *Warren* test. *Lara v. State*, 740 S.W.2d 823, 828 (Tex.App.—Houston [1st Dist.] 1987, pet. ref'd), *cert. denied*, 493 U.S. 827, 110 S.Ct. 92, 107 L.Ed.2d 57 (1989). The court in *Lara* found that because the defendant was arraigned outside the presence of the jury and because the jury was informed of the charges by the reading of the indictment and the prosecutor's voir dire statement, the failure to read the indictment and enter a plea was harmless. *Lara*, 740 S.W.2d at 828. Our case has no similar showing of arraignment outside the presence of the jury nor of any reading of the indictment to the jury. The harms mentioned and avoided in *Lara* are apparent here.