TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-03-00614-CR






Edward Fultz, Appellant


v.


The State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT

NO. 9024191, HONORABLE WILFORD FLOWERS, JUDGE PRESIDING




M E M O R A N D U M O P I N I O N



 Appellant Edward Fultz was convicted of burglary of a habitation with intent to
commit aggravated assault, and the trial court sentenced him to twenty years' confinement in the
Texas Department of Criminal Justice, Institutional Division. See Tex. Pen. Code Ann. § 30.02
(West 2003). On appeal, Fultz accuses the State of racial discrimination in the use of its peremptory
strikes. See Tex. Code Crim. Proc. Ann. art. 35.261 (West 1989); see also Batson v. Kentucky, 476
U.S. 79, 88-89 (1986). We will affirm.


BACKGROUND


 About a year and a half after a dating relationship between Fultz and Deborah
Kapchan ended, Fultz broke into Kapchan's apartment. Fultz woke Kapchan by strangling her and
repeatedly threatened to kill her with a box cutter. Kapchan reported the incident to the Austin
Police Department. Fultz was charged with burglary of a habitation with intent to commit
aggravated assault and was convicted after a trial before a jury. (1) See Tex. Pen. Code Ann. § 30.02.

 Fultz is African-American, and his sole issue in this case concerns a Batson challenge.
See Tex. Code Crim. Proc. Ann. art. 35.261; see also Batson, 476 U.S. at 88-89. During voir dire,
the State used a peremptory challenge to remove Joan Blake, one of the two panel members who was
African-American. (2) The defense raised the following objection to the challenge:


Yes, your Honor, at this time we would object to the use of the preemptory [sic]
strikes used by the State, that they were used in an impermissible manner. And if I
can elaborate, my client is black. The jury questionnaires and a view of the jurors
reflect that there are two blacks that were within the jury panel within the strike zone,
No. 27 and No. 30. The record reflects that neither one of those jurors was ever
asked any questions or made any response whatsoever to any questions or voluntary
statements by myself or by the prosecutor.



See Batson, 476 U.S. at 94-96. In response, the prosecutor stated that he struck Blake because she
had three arrests: (3) one for discharging a firearm, see Tex. Pen. Code Ann. § 42.12(a) (West 2003)
(class A misdemeanor); one for harassing communication, see id. at § 42.07 (West 2003) (class B
misdemeanor); and one for family violence, see id. at § 71.004 (West 2003) (class A misdemeanor). 
Fultz then attempted to create a record and asked that all of the panel members' criminal histories
be entered in the record. The trial court overruled the Batson objection. Later in voir dire, Fultz's
counsel asked whether the State struck all individuals on the jury panel with criminal histories. The
prosecutor stated:


The ones that were within the strike zone, I struck all of them but one who appears
on the jury panel who is on the jury that has a Class C offense, which I have
disregarded as being non-serious. But those I considered the offenses being serious,
that is, greater than a Class A, yes. Two with driving while intoxicated offenses, one
with a sexual assault offense, and of course the one I described already for the record
that had the arrest communication, discharging a firearm and an assault.



 One Caucasian juror, Kenneth Word, had a criminal conviction for theft by check but
was not struck from the jury. Although theft by check can be a class C, class B, or class A
misdemeanor, the record does not reflect the degree of Word's theft conviction. (4) See Tex. Pen. Code
Ann. §§ 31.03, 31.06 (West 2003).

 At the conclusion of trial, the jury found Fultz guilty of burglary of a habitation with
intent to commit aggravated assault, and the trial court assessed punishment at twenty years'
confinement. This appeal followed.


DISCUSSION


 Fultz raises one issue on appeal, complaining that the State racially discriminated in
the use of its peremptory strike against Blake. See Tex. Code Crim. Proc. Ann. art. 35.261; see also
Batson, 476 U.S. at 88-89. The Equal Protection Clause of the Fourteenth Amendment prohibits the
use of peremptory challenges to exclude panel members from a jury because of their race. Batson,
476 U.S. at 84. We analyze a Batson challenge in three steps: (1) the defendant must make a prima
facie showing that the State made a race-based strike against an eligible panelist; (2) if a prima facie
case is made, the State must come forward with a race-neutral reason for the strike; (3) if the State
offers a race-neutral reason, the burden shifts to the defendant to persuade the court that the stated
reason for the strike is a mere pretext for racial discrimination. Simpson v. State, 119 S.W.3d 262,
268 (Tex. Crim. App. 2003); Mandujano v. State, 966 S.W.2d 816, 818 (Tex. App.--Austin 1998,
pet. ref'd). If the trial court rules on the ultimate question of racial discrimination, it is the
explanation and not the prima facie showing that we review on appeal. Malone v. State, 919 S.W.2d
410, 412 (Tex. Crim. App. 1996). We review the court's decision for clear error. Lopez v. State,
940 S.W.2d 388, 390 (Tex. App.--Austin 1997, writ ref'd). That is, we must have a "definite and
firm conviction that a mistake has been committed" after reviewing all of the evidence in the light
most favorable to the ruling. Vargas v. State, 838 S.W.2d 552, 554 (Tex. Crim. App. 1992).

 Concerning the first Batson prong, the State's use of a peremptory challenge to
dismiss all or most African-American jurors is illustrative of the type of evidence that can be used
to raise the inference of discrimination. Keeton v. State, 749 S.W.2d 861, 867 (Tex. Crim. App.
1988). In addition, the type and manner of questions directed to the challenged juror, including lack
of questions, can be considered evidence leading to an inference of discrimination. See id. at 867. 
The record reflects that the State did not ask any questions of or receive any answers from the
excluded juror about issues raised during voir dire. We conclude that Fultz made a prima facie
showing of a race-based strike. The burden then shifted to the State to come forward with a race-neutral reason for the strike.

 We now turn to the second Batson prong. To show race neutrality, the State may
provide evidence that it challenged jurors of another race with similar characteristics as the African-American jurors who were struck. Keeton, 749 S.W.2d at 868. Also, "unless a discriminatory intent
is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." 
Simpson, 119 S.W.3d at 268 (citing Purkett v. Elem, 514 U.S. 765, 768 (1995)). In this case, the
State asserts that the prosecutor challenged all panel members with "serious" offenses, without
regard to the panel members' ethnicities. After stating his criteria for peremptory challenges, the
prosecutor provided the trial court with three additional panel members who were struck for
committing a "serious" offense. Out of these three panel members, at least one was Caucasian. (5) The
State therefore established that it had a race-neutral reason for its strike because the prosecutor
challenged panel members of other races with similar characteristics. The State satisfied the second
prong.

 Finally, we consider the third step of the Batson analysis: whether Fultz met his
burden of proving that the State's race-neutral explanation was a pretext. Fultz argues that disparate
treatment existed because a Caucasian panel member, Word, had also committed a criminal offense
though he was permitted to remain on the jury.

 The court of criminal appeals has provided a nonexclusive list of the types of
evidence that may be used to show such a pretext, including disparate treatment amongst jurors. See
Keeton, 749 S.W.2d at 868. In determining whether the trial court erred, we must focus on the
genuineness of the State's asserted motive for the strike rather than its reasonableness. Gibson v.
State, 144 S.W.3d 530, 534 (Tex. Crim. App. 2004) (citing Purkett, 514 U.S. at 765). The trial court
is in the best position to make a determination on this fact question. Id. In Gibson, the court of
criminal appeals reversed the judgment of the court of appeals "when [the court of appeals]
substituted its judgment for the trial court's in deciding that the prosecutor's facially race-neutral
explanation for striking [a panel member] was a pretext. The term 'pretext' is solely a question of
fact; there is no issue of law." Id.

 In looking at the genuineness of the State's asserted motive, we are to limit our review
to information provided in the Batson hearing. See Wright v. State, 832 S.W.2d 602, 605 (Tex.
Crim. App. 1992); see also Young v. State, 856 S.W.2d 175, 176 (Tex. Crim. App. 1993) (State may
not use appellate record "as a surrogate for the absence of a trial explanation").

 In this case, Fultz's counsel introduced the panel members' criminal histories in an
attempt to show that Caucasian, strikeable panel members with "serious" offenses remained on the
jury. The issue is whether the criminal histories in the record show that Blake was the only panel
member struck for having committed a "serious" offense, or whether panel members who were not
African-American were struck for their "serious" offenses as well.

 The prosecutor's definition of "serious" offenses was far from clear. In defining
"serious," we must limit our review to what was established during the Batson hearing. See Wright,
832 S.W.2d at 605; see also Young, 856 S.W.2d at 176. When the prosecutor used the word
"serious" in the record, he stated that he was targeting "greater than Class A" offenses. The
prosecutor then qualified his definition by providing two examples of a "serious" offense: driving
while intoxicated, which in fact is a class B misdemeanor, see Tex. Pen. Code Ann. § 49.04(b) (West
2003), and sexual assault, a felony, see id. § 22.011(f) (West Supp. 2004-05). Therefore, the trial
court may have reasonably believed that "serious" offenses were not limited to "greater than Class
A" offenses, but included certain misdemeanors as well.

 In this case, we will defer to the trial court in determining whether "serious" offenses
included certain misdemeanors, such as driving while intoxicated. The trial court is in the best
position to determine the meaning and sincerity of the parties. See Gibson, 144 S.W.3d at 534. 
Because the State struck panel members who were not African-American with "serious" offenses,
the Defendant has not met his burden of establishing that the State's asserted motive was not
genuine. The trial court's ruling was not clearly erroneous. See id.

 The judgment of conviction is affirmed.



 __________________________________________Bob Pemberton, Justice

Before Justices B. A. Smith, Puryear and Pemberton

Affirmed

Filed: October 13, 2005

Do Not Publish
1. Fultz was charged with three other offenses as well, but was not convicted.
2. The other African-American panel member, Nicole Dove, served on the jury.
3. Blake's criminal history was not discovered until after juror applications were submitted. 
In her juror application, Blake had indicated that she had never been an accused in a criminal case. 
The State obtained Blake's criminal history, along with those of the other panel members, from the
Texas Crime Information Center and the Federal Bureau of Investigation's Crime Information
Center.
4. For theft by check offenses, the penalty is determined by the amount of the check. See Tex.
Pen. Code Ann. § 31.03(e). In Word's case, the record does not disclose the amount of the check.
5. It is difficult to ascertain from the record each panel member's ethnicity. The criminal
histories provided in the record list panel members with Hispanic surnames as "White" or
"Caucasian."