# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

========================

## ON MOTION FOR REHEARING

========================

## NO. 03-03-00614-CR

**Edward Fultz, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT
## NO. 9024191, HONORABLE WILFORD FLOWERS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

We withdraw our opinion and judgment of October 13, 2005, and issue this opinion in its place.

Appellant Edward Fultz was convicted of burglary of a habitation with intent to commit aggravated assault, and the trial court sentenced him to twenty years' confinement in the Texas Department of Criminal Justice, Institutional Division. *See* Tex. Pen. Code Ann. § 30.02 (West 2003). On appeal, Fultz accuses the State of racial discrimination in the use of its peremptory strikes. *See* Tex. Code Crim. Proc. Ann. art. 35.261 (West 1989); *see also Batson v. Kentucky*, 476 U.S. 79, 88-89 (1986). We will affirm.

# BACKGROUND

About a year and a half after a dating relationship between Fultz and Deborah Kapchan ended, Fultz broke into Kapchan's apartment. Fultz woke Kapchan by strangling her and repeatedly threatened to kill her with a box cutter. Kapchan reported the incident to the Austin Police Department. Fultz was charged with burglary of a habitation with intent to commit aggravated assault and was convicted after a trial before a jury.[1] *See* Tex. Pen. Code Ann. § 30.02.

Fultz is African-American, and his sole issue in this case concerns a *Batson* challenge. *See* Tex. Code Crim. Proc. Ann. art. 35.261; *see also Batson*, 476 U.S. at 88-89. During *voir dire*, the State used a peremptory challenge to remove Joan Blake, one of the two panel members who was African-American.[2] The defense raised the following objection to the challenge:

> Yes, your Honor, at this time we would object to the use of the preemptory [sic] strikes used by the State, that they were used in an impermissible manner. And if I can elaborate, my client is black. The jury questionnaires and a view of the jurors reflect that there are two blacks that were within the jury panel within the strike zone, No. 27 and No. 30. The record reflects that neither one of those jurors was ever asked any questions or made any response whatsoever to any questions or voluntary statements by myself or by the prosecutor.

*See Batson*, 476 U.S. at 94-96. In response, the prosecutor stated that he struck Blake because she had three arrests:[3] one for discharging a firearm, *see* Tex. Pen. Code Ann. § 42.12(a) (West 2003)

---

[1] Fultz was charged with three other offenses as well, but was not convicted.

[2] The other African-American panel member, Nicole Dove, served on the jury.

[3] Blake's criminal history was not discovered until after juror applications were submitted. In her juror application, Blake had indicated that she had never been an accused in a criminal case. The State obtained Blake's criminal history, along with those of the other panel members, from the Texas Crime Information Center and the Federal Bureau of Investigation's Crime Information Center.

(class A misdemeanor); one for harassing communication, *see id.* at § 42.07 (West 2003) (class B misdemeanor); and one for family violence, *see id.* at § 71.004 (West 2003) (class A misdemeanor). Fultz then attempted to create a record and asked that all of the panel members' criminal histories be entered in the record. The trial court overruled the *Batson* objection. Later in *voir dire*, Fultz's counsel asked whether the State struck all individuals on the jury panel with criminal histories. The prosecutor stated:

> The ones that were within the strike zone, I struck all of them but one who appears on the jury panel who is on the jury that has a Class C offense, which I have disregarded as being non-serious. But those I considered the offenses being serious, that is, greater than a Class A, yes. Two with driving while intoxicated offenses, one with a sexual assault offense, and of course the one I described already for the record that had the arrest communication, discharging a firearm and an assault.

One Caucasian juror, Kenneth Word, had a criminal conviction for theft by check but was not struck from the jury. Although theft by check can be a class C, class B, or class A misdemeanor, the record does not reflect the degree of Word's theft conviction.[4] *See* Tex. Pen. Code Ann. §§ 31.03, 31.06 (West 2003).

At the conclusion of trial, the jury found Fultz guilty of burglary of a habitation with intent to commit aggravated assault, and the trial court assessed punishment at twenty years' confinement. This appeal followed.

---

[4] For theft by check offenses, the penalty is determined by the amount of the check. *See* Tex. Pen. Code Ann. § 31.03(e). In Word's case, the record does not disclose the amount of the check.

**DISCUSSION**

Fultz raises one issue on appeal, complaining that the State racially discriminated in the use of its peremptory strike against Blake. *See* Tex. Code Crim. Proc. Ann. art. 35.261; *see also Batson*, 476 U.S. at 88-89. The Equal Protection Clause of the Fourteenth Amendment prohibits the use of peremptory challenges to exclude panel members from a jury because of their race. *Batson*, 476 U.S. at 84. We analyze a *Batson* challenge in three steps: (1) the defendant must make a *prima facie* showing that the State made a race-based strike against an eligible panelist; (2) if a *prima facie* case is made, the State must come forward with a race-neutral reason for the strike; (3) if the State offers a race-neutral reason, the burden shifts to the defendant to persuade the court that the stated reason for the strike is a mere pretext for racial discrimination. *Simpson v. State*, 119 S.W.3d 262, 268 (Tex. Crim. App. 2003); *Mandujano v. State*, 966 S.W.2d 816, 818 (Tex. App.—Austin 1998, pet. ref'd). If the trial court rules on the ultimate question of racial discrimination, it is the explanation and not the *prima facie* showing that we review on appeal. *Malone v. State*, 919 S.W.2d 410, 412 (Tex. Crim. App. 1996). We review the court's decision for clear error. *Lopez v. State*, 940 S.W.2d 388, 390 (Tex. App.—Austin 1997, writ ref'd). That is, we must have a "definite and firm conviction that a mistake has been committed" after reviewing all of the evidence in the light most favorable to the ruling. *Vargas v. State*, 838 S.W.2d 552, 554 (Tex. Crim. App. 1992).

Concerning the first *Batson* prong, the State's use of a peremptory challenge to dismiss all or most African-American jurors is illustrative of the type of evidence that can be used to raise the inference of discrimination. *Keeton v. State*, 749 S.W.2d 861, 867 (Tex. Crim. App. 1988). In addition, the type and manner of questions directed to the challenged juror, including lack

4

of questions, can be considered evidence leading to an inference of discrimination. *See id.* at 867. The record reflects that the State did not ask any questions of or receive any answers from the excluded juror about issues raised during *voir dire*. We conclude that Fultz made a *prima facie* showing of a race-based strike. The burden then shifted to the State to come forward with a race-neutral reason for the strike.

We now turn to the second *Batson* prong. To show race neutrality, the State may provide evidence that it challenged jurors of another race with similar characteristics as the African-American jurors who were struck. *Keeton*, 749 S.W.2d at 868. Also, "unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Simpson*, 119 S.W.3d at 268 (citing *Purkett v. Elem*, 514 U.S. 765, 768 (1995)). In this case, the State asserts that the prosecutor challenged all panel members with "serious" offenses, without regard to the panel members' ethnicities. After stating his criteria for peremptory challenges, the prosecutor provided the trial court with three additional panel members who were struck for committing a "serious" offense. Out of these three panel members, at least one was Caucasian.[5] The State therefore established that it had a race-neutral reason for its strike because the prosecutor challenged panel members of other races with similar characteristics. The State satisfied the second prong.

Finally, we consider the third step of the *Batson* analysis: whether Fultz met his burden of proving that the State's race-neutral explanation was a pretext. Fultz argues that disparate

---

[5] It is difficult to ascertain from the record each panel member's ethnicity. The criminal histories provided in the record list panel members with Hispanic surnames as "White" or "Caucasian."

treatment existed because a Caucasian panel member, Word, had also committed a criminal offense though he was permitted to remain on the jury.

In *Miller-El*, the U.S. Supreme Court required a side-by-side comparison of African-American and Caucasian jurors when addressing a race-based *Batson* challenge. *Miller-El v. Dretke*, 125 S. Ct. 2317, 2325 (2005). If "a prosecutor's proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination." *Id*. at 2325. In *Miller-El*, the prosecutor had peremptorily stricken an African-American panel member for favoring rehabilitation over the death penalty. *Id*. at 2326-27. However, the record showed "unequivocally" that the panel member believed the death penalty could be imposed without rehabilitation. *Id*. at 2327. More importantly, the record also showed that there were several Caucasian panelists who had reservations against the death penalty because they favored rehabilitation. *Id*. The court held:

> In sum, nonblack jurors whose remarks on rehabilitation could well have signaled a limit on their willingness to impose a death sentence were not questioned further and drew no objection, but the prosecution expressed apprehension about a black juror's belief in the possibility of reformation even though he repeatedly stated his approval of the death penalty and testified that he could impose it according to state legal standards even when the alternative sentence of life imprisonment would give a defendant (like everyone else in the world) the opportunity to reform.

*Id*.

*Miller-El* reaffirms prior case law that prohibited disparate treatment among jurors and did not announce any new elements or criteria for determining a *Batson* claim. *See Murphy v. Dretke*, 416 F.3d 427, 439 (5th Cir. 2005). Instead, the Court emphasized that a trial or appellate

6

court is limited in its review of the prosecutor's stated reason. *See Miller-El*, 125 S. Ct. at 2332. A court cannot search for *any* reason, however rational, to support the prosecutor's strike. *Id*. Rather, it is bound to consider only the prosecutor's stated reason. *Id*. This preserves the prosecutor's burden to state a racially neutral reason for the strike. *See id*.

In this case, the trial court did not believe disparate treatment existed among the panel members. In determining whether the trial court erred, we must focus on the genuineness of the State's asserted motive for the strike rather than its reasonableness. *Miller-El*, 125 S. Ct. at 2332; *Gibson v. State*, 144 S.W.3d 530, 534 (Tex. Crim. App. 2004) (citing *Purkett*, 514 U.S. at 765). The trial court is in the best position to make a determination on this fact question. *Gibson*, 144 S.W.3d at 534. In *Gibson*, the court of criminal appeals reversed the judgment of the court of appeals "when [the court of appeals] substituted its judgment for the trial court's in deciding that the prosecutor's facially race-neutral explanation for striking [a panel member] was a pretext. The term 'pretext' is solely a question of fact; there is no issue of law." *Id*.

In looking at the genuineness of the State's asserted motive, we are to limit our review to information provided in the *Batson* hearing. *See Wright v. State*, 832 S.W.2d 602, 605 (Tex. Crim. App. 1992); *see also Young v. State*, 856 S.W.2d 175, 176 (Tex. Crim. App. 1993) (State may not use appellate record "as a surrogate for the absence of a trial explanation").

In this case, Fultz's counsel introduced the panel members' criminal histories in an attempt to show that Caucasian, strikeable panel members with "serious" offenses remained on the jury. The issue is whether, when doing the side-by-side analysis required by *Miller-El*, the criminal histories in the record show that Blake was the only panel member struck for having committed a

7

"serious" offense, or whether panel members who were not African-American were struck for their "serious" offenses as well.

The prosecutor's definition of "serious" offenses was far from clear. In defining "serious," we must limit our review to what was established during the *Batson* hearing. *See Wright*, 832 S.W.2d at 605; *see also Young*, 856 S.W.2d at 176. When the prosecutor used the word "serious" in the record, he stated that he was targeting "greater than Class A" offenses. The prosecutor then *qualified* his definition by providing two examples of a "serious" offense: driving while intoxicated, which in fact is a class B misdemeanor, *see* Tex. Pen. Code Ann. § 49.04(b) (West 2003), and sexual assault, a felony, *see id*. § 22.011(f) (West Supp. 2004-05). Taken as a whole, the prosecutor defined "serious" both by explanation and examples. Therefore, the trial court may have reasonably believed that "serious" offenses were not limited to "greater than Class A" offenses, but included certain misdemeanors as well.[6]

In this case, we will defer to the trial court in determining whether "serious" offenses included certain misdemeanors, such as driving while intoxicated. The trial court is in the best position to determine the meaning and sincerity of the parties. *See Gibson*, 144 S.W.3d at 534. Because the State struck panel members who were not African-American with "serious" offenses, the Defendant has not met his burden of establishing that the State's asserted motive was not genuine. The trial court's ruling was not clearly erroneous. *See id*.

---

[6] On appeal, the State argues that the prosecutor intended "serious" to mean "an offense that was worse than a Class C misdemeanor." We find this position to be unsupported by the record.

The judgment of conviction is affirmed.

                                              _____

                                              Bob Pemberton, Justice

Before Justices B. A. Smith, Puryear and Pemberton

Affirmed

Filed:   December 16, 2005

Do Not Publish

9