Joseph L. FRITZ, Appellant,

v.

The STATE of Texas.

No. 1429–95.

Court of Criminal Appeals of Texas,
En Banc.

June 11, 1997.

Donald H. Fidler, Jr., San Antonio, for appellant.

Ed Shaughnessy, III, Asst. Dist. Atty., San Antonio, Matthew Paul, State's Atty., Austin, for State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

BAIRD, Judge.

A jury convicted appellant of capital murder and the trial court assessed punishment at life. Tex. Penal Code Ann. § 19.03. The Court of Appeals affirmed *Fritz v. State,* No.04–94–00659–CR, 1995 WL 624569 (Tex. App.—San Antonio, decided October 25, 1995) (unpublished). We granted appellant's petition for discretionary review to determine whether the State improperly exercised its peremptory challenges to exclude from the jury veniremembers on the basis of gender. We will reverse.

### I.

During jury selection, the State peremptorily challenged seven male veniremembers. Appellant objected, contending the State's challenges discriminated on the basis of gender. In response, the prosecutor stated he removed all males under the age of thirty because of their potential bias or shared identity with appellant. The trial judge overruled appellant's objection.

On direct appeal, appellant contended the State's peremptory challenges violated the Fourteenth Amendment ban on gender discrimination as applied to jury selection in *J.E.B. v. Alabama ex rel. T.B.,* 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994). The Court of Appeals found the State's explanation to be facially neutral and because appel-

lant presented no evidence in rebuttal, the Court held: "Because the findings of the trial judge are supported by the record, we do not find the findings to be 'clearly erroneous.'" *Fritz*, Slip op., pg. 5.

## II.

### A.

The Supreme Court first applied the Equal Protection Clause to the jury selection process in *Strauder v. West Virginia*, 100 U.S. 303, 25 L.Ed. 664 (1879), where it declared unconstitutional a statute which excluded citizens from jury service on the basis of race. In *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), the Supreme Court expanded *Strauder* to peremptory challenges. Twenty years later, the Supreme Court delivered the landmark case of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and removed *Swain's* "crippling burden" which had the effect of immunizing prosecutors from constitutional scrutiny. *Id.*, 476 U.S. at 92, 106 S.Ct. at 1721. The *Batson* Court held: "Purposeful racial discrimination in selection of the venire violates a defendant's right to equal protection because it denies him the protection that a trial by jury is intended to secure." *Id.*, 476 U.S. at 86, 106 S.Ct. at 1717.

In *Powers v. Ohio*, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), the Supreme Court held the defendant had standing to object to the race based challenges of veniremembers on equal protection grounds under *Batson* even if the defendant was not of the same race as the challenged veniremembers. *Batson* was subsequently applied to civil cases in *Edmonson v. Leesville Concrete, Co.*, 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991). One year later, the Supreme Court held the prohibition against exercising a racially motivated peremptory challenge applied to defendants as well as prosecutors. *Georgia v. McCollum*, 505 U.S. 42, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992).

Subsequently, the Supreme Court considered gender under the equal protection framework. In *J.E.B.*, the Court held the same harm caused by racial discrimination in the jury selection process occurs with gender discrimination as well. *J.E.B.*, 511 U.S. at 139, 114 S.Ct. at 1427.

### B.

In *Ballard v. United States*, 329 U.S. 187, 67 S.Ct. 261, 91 L.Ed. 181 (1946), the Supreme Court first considered the constitutionality of a California statute regarding women and jury service. Although women qualified for jury service, their inclusion was not obligatory. The Court considered the effect this statute had on the federal court system and held because both the grand jury and petit jury were drawn from an improper all male venire, the indictments had to be dismissed. The Court held:

... The systematic and intentional exclusion of women, like the exclusion of a racial group, deprives the jury system of the broad base it was designed by Congress to have in our democratic society. It is a departure from the statutory scheme. As well stated in *United States v. Roemig*, "Such action is operative to destroy the basic democracy and classlessness of jury personnel." It "does not accord to the defendant the type of jury to which the law entitles him. It is an administrative denial of a right which the lawmakers have not seen fit to withhold from, but have actually guaranteed to him." The injury is not limited to the defendant—there is injury to the jury system, to the law as an institution, to the community at large, and to the democratic ideal reflected in the processes of our courts. (Internal citations omitted.)

*Id.*, 329 U.S. at 195, 67 S.Ct. at 265.

In *Hoyt v. Florida*, 368 U.S. 57, 82 S.Ct. 159, 7 L.Ed.2d 118 (1961), the Supreme Court appeared to retreat from *Ballard* in considering a Florida statute. The *Hoyt* Court held it was *not* unconstitutional for states to "relieve" women from jury service, unless they did not want to be relieved. *Id.*, 368 U.S. at 62, 82 S.Ct. at 162. Courts allowed such exclusions because women were regarded as the center of the home and family and requiring them to sit on a jury would interfere with their familial responsibilities. *Ibid.*

However, the Court later disavowed *Hoyt* in *Taylor v. Louisiana*, 419 U.S. 522, 95

S.Ct. 692, 42 L.Ed.2d 690 (1975), and held distinctive groups in the community, such as women, could not be excluded by statute. Such an exclusion would not be fairly representative of the community as a whole. "If the fair-cross-section rule is to govern the selection of juries, as we have concluded it must, women cannot be systematically excluded from jury panels from which petit juries are drawn." *Id.*, 419 U.S. at 538, 95 S.Ct. at 699. The Court went on to state:

> ... [W]e think it is no longer tenable to hold that women as a class may be excluded to given automatic exemptions based solely on sex if the consequence is that criminal jury venires are almost totally male. To this extent we cannot follow the contrary implications of the prior cases, including *Hoyt v. Florida.*

*Taylor*, 419 U.S. at 537, 95 S.Ct. at 701. The reasoning in *Taylor* was founded on the requirement that the jury should be made up of a fair cross-section of the community which is guaranteed by the Sixth Amendment. *Id.*, 419 U.S. at 530, 95 S.Ct. at 697. "Community participation in the administration of the criminal law, moreover, is not only consistent with our democratic heritage, but is also critical to public confidence in the fairness of the criminal justice system." *Id.*, 419 U.S. at 530, 95 S.Ct. at 698.

Finally, in *J.E.B.*, the Supreme Court held the harm caused by gender discrimination in the jury selection process is equivalent to the harm caused by racial discrimination.

> Failing to provide jurors the same protection against gender discrimination could frustrate the purpose of *Batson* itself. *Because gender and race are overlapping categories, gender can be used as a pretext for racial discrimination.* Allowing parties to remove racial minorities from the jury not because of their race, but because of their gender, contravenes well-established equal protection principles and could insulate effectively racial discrimination from judicial scrutiny.

*J.E.B.*, 511 U.S. at 145, 114 S.Ct. at 1430.[1]

### C.

■ A major tenet of the Supreme Court's decision prohibiting the peremptory challenge of veniremembers on the basis of gender and race is due to the negative and inaccurate stereotyping that accompanies such a challenge. *J.E.B.*, 511 U.S. at 137, 114 S.Ct. at 1426. The Supreme Court has repeatedly shunned the use of stereotypes; such imaginary biases are not acceptable excuses for excluding, either by statute or peremptorily, citizens from jury service. As early as *Strauder*, the Supreme Court has recognized the negative effects of stereotyping distinctive groups in the community.

> ... The very fact that colored people are singled out and expressly denied by a statute all right to participate in the administration of the law, as jurors, because of their color, *though they are citizens, and may be in other respects fully qualified, is practically a brand upon them, affixed by the law, an assertion of their inferiority, and a stimulant to that race prejudice which is an impediment* to securing to individuals of the race that equal justice which the law aims to secure to all others.

*Strauder*, 100 U.S. at 308. In *Taylor*, the Supreme Court has also condemned stereotyping because of gender. The Court held that allowing women to serve on juries is no more burdensome to the court system than the process of sorting out the possible men to serve. *Taylor*, 419 U.S. at 534, 95 S.Ct. at 700.

The *Batson* Court also commented about the effects of stereotyping.

> ... The core guarantee of equal protection, ensuring citizens that their State will not discriminate on account of race, would be meaningless were we to approve the exclusion of jurors on the basis of such assumptions, which arise solely from the jurors' race.

*Batson*, 476 U.S. at 97, 106 S.Ct. at 1723. Again, in *Powers*, the Supreme Court stated: "[r]ace cannot be a proxy for determining juror bias or competence. We may not accept as a defense to racial discrimination the very stereotype the law condemns." *Powers*, 499 U.S. at 410, 111 S.Ct. at 1370.

A few months later in *Edmonson*, the Court stated, "[I]f race stereotypes are the

---

1. All emphasis is supplied unless otherwise indicated.

price for acceptance of a jury panel as fair, the price is too high to meet the standard of the Constitution." *Edmonson*, 500 U.S. at 630, 111 S.Ct. at 2088. Again, in *McCollum*, the Supreme Court stated: "This Court firmly has rejected the view that assumptions of partiality based on race provide a legitimate basis for disqualifying a person as an impartial juror." *McCollum*, 505 U.S. at 59, 112 S.Ct. at 2359.

After rejecting the use of race-related veniremember challenges, the Court applied the *Batson* ruling, rejecting gender-related challenges in *J.E.B.*

> In view of these concerns, the Equal Protection Clause prohibits discrimination in jury selection on the bases of gender, or on the assumption that an individual will be biased in a particular case for *no reason other than the fact that the person happens to be a woman or happens to be a man.*

*J.E.B.*, 511 U.S. at 146, 114 S.Ct. at 1430.

This Court has also forbidden stereotyping. In *Williams v. State*, 804 S.W.2d 95, 106 (Tex.Cr.App.1991), we stated:

> ... the prosecutor may not rebut the defendant's prima facie case of discrimination by stating merely that he challenged jurors of the defendant's race on the assumption—or his intuitive judgment—that they would be partial to the defendant *because of their shared race.*

In *Hill v. State*, 827 S.W.2d 860, 862 (Tex. Cr.App.1992), the state challenged a veniremember because he "felt like he would identify with the defendant." This Court held the veniremember's shared bias or common ground with the defendant was *not* a neutral explanation. We held:

> Thus the alleged identity between the veniremen and appellant, *based only on the shared sex and shared race of the venireman* and appellant, does not escape *Batson*'s prohibition against making the assumption that because the defendant and the venireman are of the same race they would identify with each other.

*Id.*, 827 S.W.2d at 869.

### III.

■ In the instant case, the State peremptorily challenged several veniremembers who were male and under the age of thirty upon the assumption that such male veniremembers would possess a "potential bias" or "common ground" with the defendant. As a result, the issue is whether or not the State's peremptory challenges of male veniremembers were constitutional.

■ In *J.E.B.*, the Supreme Court held that challenging a veniremember because of gender is a violation of the Equal Protection Clause. Examining this case in the light of *J.E.B.*, the complained of peremptory challenges fail to satisfy the burden to articulate a gender-neutral explanation. Whenever a veniremember is excluded on the basis of gender, the Equal Protection Clause is violated. We, therefore, hold the State's peremptory challenges violated the requirements of *J.E.B.*

The judgment of the Court of Appeals is reversed and the case is remanded to the trial court.

WOMACK, J., joins the judgment of the Court and, except for Part II.B., its opinion.

KELLER and HOLLAND, JJ., dissent.

MEYERS, Judge, concurring.

Despite the Supreme Court's declaration in *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994) that gender-based peremptory strikes are unconstitutional, the Court of Appeals mistakenly characterized the explanation given by the prosecutor in response to the appellant's prima facie case as being "gender neutral". But a peremptory strike cannot be called gender neutral when, as here, gender is an inextricable component of the only reason given in response to the strike. For this reason, I agree with the majority opinion that the trial court erred in its ruling.

No doubt, the Supreme Court's mandate in *J.E.B.* reaches only those peremptory strikes *based* on gender. The United States Constitution thus does not bar those peremptory strikes "based on a juror characteristic other than gender," so long as the "proffered ex-

planation [is] not pretextual." *J.E.B.*, 511 U.S. at 145, 114 S.Ct. at 1430. Of course, once the objecting party makes a prima facie case of purposeful discrimination, the responding party may come forward with two or more *independent* explanations for its peremptory challenge(s). If at least one of these explanations is neutral, the trial court will have to determine whether the responding party would have exercised the peremptory challenge(s) anyway solely because of the neutral reason(s). *See Hill v. State*, 827 S.W.2d 860, 869 (Tex.Crim.App.1992). In this case, however, the prosecutor tendered only *one* explanation for his peremptory strikes of both venire-persons Hernandez and Straube. Gender and age served, equally, as a basis for these strikes. The State's explanation that both venire members were struck *because* they were "males ... under the age of thirty" indicates that neither factor was a matter of mere happenstance. In other words, the State would not have struck Hernandez and Straube *but for their gender*.

*Hill v. State*, 827 S.W.2d 860 (Tex.Crim. App.1992) is instructive in this regard. In *Hill*, the defendant objected, under the Equal Protection Clause, to the State's peremptory challenge of an African-American male. The prosecutor responded that he challenged the potential juror for two independent reasons:

> "[a] I felt like he would identify with the defendant. He's black, he's male, and [b] I didn't like the way he responded to my questions ... his attitude, his demeanor." [1]

With respect to the prosecutor's "identity" theory, a plurality of this Court held that a racially discriminatory intent was inherent in the prosecutor's explanation: "[T]he alleged identity between the veniremen and [the defendant], based only on the shared sex and shared race of the venireman and [the defendant], does not escape *Batson*'s prohibition against making the assumption that because the defendant and the veniremen are of the same race they would identify with each other." *Id.* at 869. In fact, four concurring

judges of this Court expressed an even stronger view. They would have held simply that "equal protection is denied whenever race is a factor in the exercise of a peremptory challenge." *Id.* at 875.

A similar situation was addressed in *Jones v. Ryan*, 987 F.2d 960 (3rd Cir.1993). In that case, the defendant objected, under the Equal Protection Clause, to the prosecutor's peremptory challenge of an African-American female. The prosecutor responded that he challenged the potential juror because she was "the same approximate age and race [as] the [male] defendant" and that he did so "to avoid any potential ... attraction ... between the juror and the defendant." The Third Circuit noted that "[s]imilarly situated white women apparently were not within the scope of the prosecutor's potential attraction theory," *id.* at 974, and held that a racially discriminatory intent "was inherent in the explanation given by the prosecutor," *id.*

As in *Hill* and *Jones*, the prosecutor in this case proffered an unconstitutional explanation for the peremptory challenges of Hernandez and Straube. To hold otherwise would undermine the letter and spirit of *J.E.B.* With these comments I join the opinion of the Court.

MANSFIELD, Judge, dissenting.

I respectfully dissent to the majority's holding that the State's explanation for the peremptory challenges in question was not gender-neutral.

### The Relevant Facts

Appellant, Joseph L. Fritz, was convicted of capital murder in the 226th District Court of Bexar County. During jury selection, the State peremptorily challenged seven of the fourteen males and three of the eighteen females on the venire.[1] Appellant timely objected to the peremptory challenges of the seven males on the ground they were gender-based and therefore in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitu-

---

1. At the time of the *Hill* opinion, peremptory challenges based on gender had not yet been held unconstitutional.

1. Because the State did not seek the death penalty, it had ten peremptory challenges to exercise. See Tex.Code Crim. Proc. Art. 35.15(b).

tion. Although the State responded that appellant had failed to make a prima facie case of purposeful gender discrimination, it proceeded nonetheless to offer explanations for the peremptory challenges of the seven males, explaining that it was doing so for "appellate review purposes." With respect to five of the peremptory challenges, the State's explanations were plainly gender-neutral, but with respect to the remaining two (those striking venire members Roland Hernandez and Erik Straube), the State's explanation was that they were struck because they were "males ... under the age of thirty." The State further explained that its policy in this case was to strike all males under the age of thirty because of the "bias or common ground" they might have with appellant, who was a 21–year–old male. The State mentioned nothing about striking females under the age of thirty.

After the State gave its explanations, the district court found that appellant had made a prima facie showing of purposeful gender discrimination. The district court also found, however, that the State's explanations were gender-neutral and true. Consequently, it overruled appellant's objection.

On direct appeal, appellant renewed his federal equal protection claim, arguing that the State's peremptory challenges of venire members Hernandez and Straube because they were males under the age of thirty amounted to unconstitutional gender discrimination. The Fourth Court of Appeals rejected appellant's argument, holding that the district court's ruling on his equal protection claim was not clearly erroneous:

> Appellant presented no evidence which would cast doubt upon the facially neutral explanations proffered by the prosecutor.... Because the findings of the trial judge are supported by the record, we do not find the findings to be "clearly erroneous."

*Fritz v. State,* No. 04–94–00659–CR, 1995 WL 624569 (Tex.App.—San Antonio, Oct.25, 1995) (unpublished) (quotation marks in original). We granted appellant's petition for discretionary review to determine whether the State's explanation for its peremptory challenges of Hernandez and Straube was, as

a matter of law, gender-neutral. See Tex. R.App. Proc. 200(c)(3).

In his brief to this Court, appellant argues that the State may not "us[e] the shared gender of [a] venireman and [a defendant] as a means of [presuming] an identity between them." Appellant further argues that "the fact that the State [in this case] used gender as part of its explanation for [two of] its peremptory challenge[s] ... is indicative of purposeful discrimination." In its reply brief, the State argues simply that the trial court's overruling of appellant's equal protection claim was not "clearly erroneous" because (a) "the explanations [for the peremptory challenges] put forth by the prosecution were gender-neutral on their face" and (b) appellant offered "no proof ... that the explanations were implausible or pretextual."

### The Relevant Law

The Equal Protection Clause provides that "[n]o state shall ... deny to any person within its jurisdiction the equal protection of the laws." Under this clause, "whether the trial is civil or criminal, potential jurors, as well as litigants, have [a] right to jury selection procedures that are free from state-sponsored group stereotypes rooted in, and reflective of, historical prejudice." *J.E.B. v. Alabama ex rel. T.B.,* 511 U.S. 127, 128, 114 S.Ct. 1419, 1421, 128 L.Ed.2d 89 (1994). Thus, the Equal Protection Clause prohibits purposeful discrimination in jury selection on the basis of race, *Batson v. Kentucky,* 476 U.S. 79, 85–86, 106 S.Ct. 1712, 1716–1717, 90 L.Ed.2d 69 (1986), or gender, *J.E.B. v. Alabama ex rel. T.B.,* 511 U.S. at 145–146, 114 S.Ct. at 1430, or on the assumption that an individual will be biased in a particular case for no reason other than her race, *Batson v. Kentucky,* 476 U.S. at 97–98, 106 S.Ct. at 1723–1724, or gender, *J.E.B. v. Alabama ex rel. T.B.,* 511 U.S. at 145–146, 114 S.Ct. at 1430. The *Batson* and *J.E.B.* opinions were "grounded on the need to address our Nation's historical and uniquely painful and destructive patterns of race and sex discrimination." *Casarez v. State,* 913 S.W.2d 468, 498 (Tex.Crim.App.1994) (Mansfield, J., concurring on reh'g).

Either party in a criminal trial has standing to object to the other party's use of a peremptory challenge on the basis of race or

gender. *Georgia v. McCollum,* 505 U.S. 42, 55–56, 112 S.Ct. 2348, 2357, 120 L.Ed.2d 33 (1992). The objecting party must first make a prima facie showing that the other party has used a peremptory challenge to remove a potential juror on account of her race or gender. *Purkett v. Elem,* 514 U.S. 765, 767, 115 S.Ct. 1769, 1770, 131 L.Ed.2d 834 (1995). Once the objecting party has made out a prima facie case of purposeful discrimination (step one), the burden of production shifts to the other party to come forward with a neutral explanation (step two). *Id.* If a neutral explanation is tendered, the trial court must then decide (step three) whether the objecting party has proved purposeful discrimination.[2] *Id.* At the second step of this process, the issue is the facial neutrality of the offered explanation. *Id.* at 768, 115 S.Ct. at 1771. "Unless a discriminatory intent is inherent in the ... explanation, the reason offered will be deemed ... neutral." *Id.* Whether the explanation offered is actually neutral is a question of law. *Id.; United States v. Johnson,* 941 F.2d 1102, 1108 (10th Cir.1991). Finally, if the inquiry properly proceeds to step three and the trial court rules on the ultimate question of purposeful discrimination, that decision is reviewable on appeal for clear error. *Whitsey v. State,* 796 S.W.2d 707, 726 (Tex.Crim.App.1989).

### Analysis

The question presented today is a "step two" question, i.e., whether the State's explanation for its peremptory challenges of venire members Hernandez and Straube was gender-neutral. The State explained that it peremptorily challenged them because they fell into the relatively narrow category of males under the age of thirty, i.e., those persons who, it was reasonable to believe, might identify closely with the defendant. In other words, it was not the State's policy to strike *all* males, which would have been forbidden under *J.E.B.,* but rather only those in a small subset of the male gender. I believe that the State's policy in this case, reasonable on its face, was permissible under *J.E.B.*

In *J.E.B.* the Supreme Court condemned the invidious, broad ranging discrimination that would result if a person were to be peremptorily struck merely because of his gender. The Supreme Court explained that such a strike would, among other things, send a message to all those who learn of it "that certain individuals, for no reason other than gender, are presumed unqualified by state actors to decide important questions upon which reasonable persons could disagree." *J.E.B. v. Alabama ex rel. T.B.,* 511 U.S. at 141, 114 S.Ct. at 1428. But that was not the message sent by the State's strikes of Hernandez and Straube. The message sent was not that all males were unqualified to serve as jurors, but rather only that small subset under the age of thirty who, it was reasonable to believe, might identify closely with the defendant. The State was not indulging in the assumption, forbidden by *J.E.B.,* that venire members Hernandez and Straube would be biased solely because of their gender.

The State, as representative of the people, has a strong interest in assuring that criminal juries are fair and impartial, and it must be free to use peremptory challenges to strike venire members whose attributes reasonably call into question their ability to be fair and impartial, as long as such peremptory challenges do not reinforce group stereotypes rooted in, and reflective of, historical prejudice. The State's challenges in this case did not reinforce such stereotypes and were permissible.

I would hold that the State's explanation for its peremptory challenges of venire members Hernandez and Straube was gender-neutral within the meaning of Supreme Court precedent. I would affirm the judgment of the court of appeals.

McCORMICK, P.J., joins.

---

2. Once the responding party has offered a neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of purposeful discrimination, the preliminary issue of whether the objecting party had made a prima facie showing becomes moot. *Hernandez v. New York,* 500 U.S. 352, 359, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991) (plurality opinion).