Patti Suzanne SUTPHIN, Appellant,

v.

Elvin Theodore SUTPHIN, Jr., Appellee.

No. 07–96–0358–CV.

Court of Appeals of Texas,
Amarillo.

July 2, 1998.

1. *DeGarmo v. State*, 691 S.W.2d 657, 661 (Tex. Crim.App.1985).

Law Offices of Susan A. Allinger, Susan A. Allinger, Houston, for appellant.

Law Offices of Pamela E. George, Pamela E. George, Houston, for appellee.

Before DODSON, QUINN and REAVIS, JJ.

QUINN, Justice.

Patti Suzanne Sutphin (Patti) appeals from a final divorce decree. Her three points of error, though worded somewhat differently, all raise the same question. She asks if the trial court erred in rejecting her *Batson*[1] challenge because the guardian *ad litem* used "all six peremptory strikes against female venire members." We answer no, overrule the points, and affirm.

### Background

Though the record contained much conflicting evidence, the following was undisputed below. Elvin Theodore Sutphin, Jr. (Elvin) petitioned for a divorce from Patti. The couple had two children, and before the divorce became final, a question arose as to their custody. A jury trial was eventually convened for purposes of resolving the matter. In selecting the jury, Dennis Kelly (Kelly), attorney *ad litem* for the two offspring, exercised six peremptory strikes. With each, he struck a female venire member.

Subsequently, the gathering disbanded and reconvened in the court's chambers. There, Patti orally presented a *Batson* motion. Through that motion, she alleged that Kelly used his peremptory challenges in a manner that unlawfully discriminated against the venire members he struck. The court listened to her argument. Once Patti completed same, it turned to Kelly and engaged in the following exchange with him:

Court: You may respond to the motion, Mr. Kelly.

Kelly: Yes, your Honor. My understanding of the Rule 232 is, peremptory challenges is [sic] made to jurors without any reasons, therefore. And as such, my position, unless you direct me otherwise, is to say, that [sic] Texas Rules of Civil Procedure does [sic] not require me to ask any questions.

Court: You all don't think the decision by the U.S. Supreme Court in *Batson vs. Kentucky* requires that?

Kelly: I realize that, your Honor. If you tell me to answer, I will.

Court: State of Texas Supreme Court adopted *Batson?*

. . .

Kelly: Yes sir.

Court: That's what I thought. Do you disagree with that?

Kelly: Whether I agree or disagree doesn't make any difference, your Honor.

Court: I don't require you to answer it. If you don't answer it I going [sic] to grant the motion.

Kelly: Then I will answer it.

At that point, Kelly attempted to proffer reasons for striking the six women. The first (member 4) was removed because she and her brother had "both gone through domestic relations custody cases" and he thought that "she would be unduly influenced because of that." The second (member 11) was removed because she had been "through a lot in the domestic relations area." He also thought she was a nurse and opted not to have "any physical or mental health care, somebody associated with the mental health care industry" sit on the jury. He struck the third (member 12) allegedly because of the "criminal applications" involved in the case and because she was married to a police officer. With regard to the fourth (member 16), he could not provide a reason since he did not have his notes with him. The fifth woman (member 17) was struck because she "was vacillating" and "was too noncommittal on a very important issue"; what the issue was went unmentioned. And, he challenged the final venire member (member 21) because she allegedly "had personal knowledge of Spring, Texas," "knew the high schools in

---

1. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

the area," "was too close to the facts of this case," and "had personal knowledge of the facts of this case."

Immediately after Kelly uttered the foregoing reasons, Elvin asked to be heard. He suggested that venire member 16 (the one about whom Kelly said nothing) was susceptible to being removed because she was supposedly "predisposed against a father seeking conservatorship." This was allegedly so because she had been involved in a divorce and thought her ex-husband "had been a good parent 'some of the time.'" With this said, Kelly did nothing to indicate whether he agreed with Elvin. Other than object to Elvin's comments as irrelevant, Patti said nothing else about the *Batson* matter.

Having heard the argument of counsel, the court denied the motion. It did so based upon its own recollection of a portion of venire member eleven's voir dire and the explanations proffered by Kelly, including that regarding the absence of his notes.

### Points of Error One through Three

As previously stated, Patti asserts that the court erred in overruling her *Batson* challenge. We disagree.

#### 1. Standard of Review

■ Over a decade ago, the United States Supreme Court declared that a litigant could not exercise his peremptory challenge in an invidiously discriminatory manner. *Batson v. Kentucky,* 476 U.S. 79, 89, 106 S.Ct. 1712, 1719, 90 L.Ed.2d 69, 82–83 (1986). Though *Batson* involved racial discrimination, its reasoning now encompasses discrimination based on a venire member's gender. *J.E.B. v. Alabama,* 511 U.S. 127, 145, 114 S.Ct. 1419, 1430, 128 L.Ed.2d 89, 102–103 (1994); *see Fritz v. State,* 946 S.W.2d 844, 847 (Tex. Crim.App.1997) (en banc) (recognizing the applicability of *J.E.B.* in Texas). Furthermore, whether such discrimination unconstitutionally taints a peremptory strike is determined through the application of a three part test.

■ The first step obligates the party asserting that discrimination occurred to establish a prima facie case of same. *Goode v. Shoukfeh,* 943 S.W.2d 441, 445 (Tex.1997).

This entails the presentation of evidence of "more than a modicum of probative value," *Linscomb v. State,* 829 S.W.2d 164, 166 (Tex. Crim.App.1992) (en banc), which supports the rational inference that purposeful discrimination occurred. *Held v. State,* 948 S.W.2d 45, 48 (Tex.App.—Houston [14th Dist.] 1997, pet. ref'd) (quoting, *Batson v. Kentucky, supra*). Admittedly, the amount necessary to satisfy this burden is difficult to quantify. *Linscomb v. State,* 829 S.W.2d at 166. But, it must be enough to "incline [one] toward a [reasonable] belief" of discrimination. *Id.* Thus, all relevant circumstances are considered, such as the existence of a pattern of strikes against a particular class of persons or the nature of the questions propounded and statements made by the litigant who struck the venire member. *Edmonson v. Leesville Concrete Co.,* 500 U.S. 614, 631, 111 S.Ct. 2077, 2088–89, 114 L.Ed.2d 660, 680 (1991); *United States v. Branch,* 989 F.2d 752, 755 (5th Cir.), *cert. denied,* 509 U.S. 931, 113 S.Ct. 3060, 125 L.Ed.2d 742 (1993).

■ Should the movant fulfill his duty to present a prima facie case of discrimination, then the second step comes into play. Thereunder, the party who exercised the strikes must explain why he did so. *Id.* Moreover, the reasons proffered must be facially neutral. *Id.* That is, they must be free of all ties to race or gender, *Goode v. Shoukfeh,* 943 S.W.2d at 445, including but not limited to stereotypes involving race or gender. *J.E.B. v. Alabama,* 511 U.S. at 138–39, 114 S.Ct. at 1426–27, 128 L.Ed.2d at 107. And, though they may be silly, superstitious, or founded upon hunch, guess, or experience, they are acceptable so long as on their face they do not implicate race or gender. *Goode v. Shoukfeh,* 943 S.W.2d at 445.

Once the first and second steps have been satisfied, the parties then move to the third. It entails the movant persuading the court to conclude that his opponent engaged in purposeful discrimination. *Goode v. Shoukfeh,* 943 S.W.2d at 445–46. This can be attempted via a number of avenues, not the least of which is by illustrating that the justifications offered under the second step were pretextual or unfounded. But, regardless of the tack

taken, the movant must prove his allegations here just as he would have to in any other proceeding.

■ Finally, in reviewing the trial court's decision, we adhere to an abuse of discretion standard. *Id.* at 446. This permits us to review *de novo* pure questions of law, *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992), such as whether the reason given for exercising the strike is truly neutral. *See Goode v. Shoukfeh*, 943 S.W.2d at 445 (noting that whether a justification is facially neutral is treated as a matter of law). However, as to questions of fact (such as whether the neutral reason should be believed), we must defer to the lower court's resolution of same. *Id.* at 446. In other words, if there are two permissible views of the evidence and the trial court selects one, its decision must be accepted. *Id.*

### 2. Application of Standard

■ As illustrated by the factual recitation above, Patti raised her *Batson* objection and posited grounds allegedly supporting her contention. The court then informed Kelly that the motion would be granted if he opted not to explain the reasons underlying his peremptory challenges. At that point, Kelly informed the court of his reasons. Upon his doing so, the matter of whether Patti actually presented a prima facie case of discrimination became moot. *Goode v. Shoukfeh*, 943 S.W.2d at 445. Thus, we need not determine if she satisfied the first prong of the *Batson* test. Nor need we address whether the reasons given by Kelly in response to the motion were facially neutral. This is so because Patti fails to allege that they were not. Instead, the focus of her argument lies on the notion that they were unbelievable or a mere pretext for discrimination. Thus, we need only address the third prong of the test. And, in doing so, we are unable to conclude that the court abused its discretion in denying the motion.

■ It may be that Kelly used his six peremptory strikes to remove six females from the venire. Yet, a number of females remained on the venire who were susceptible to being selected.[2] Furthermore, the reasons offered by Kelly for exercising the strikes as he did were facially neutral. And, though some may question them, as did Patti, they were not so incredible as to not merit belief. Thus, we cannot interfere with the trial court's obvious decision to believe them. *See Goode v. Shoukfeh*, 943 S.W.2d at 448 (noting that if a justification is too incredible, the appellate court need not defer to the trial court's decision to assign them any weight).

■ Given that at least two permissible views of the evidence existed, one suggesting discrimination and the second illustrating otherwise, we have no choice but to stay the course set below. *See id.* at 446 (stating that "[w]hen ... a party offers a facially ... neutral explanation, a reviewing court cannot re-weigh the evidence and reach a conclusion different from that of the trial court unless ... the explanation offered is too incredible to be believed"). In other words, evidence existed upon which the trial court could have concluded that Kelly's strikes we not invidiously exercised.[3] So, we may not liken the trial court's decision to deny Patti's *Batson* challenge to an abuse of discretion.

■ Finally, Patti suggests that Kelly's failure to justify his striking venire member 16 was alone enough to mandate reversal. We disagree for several reasons. First, the

---

2. The number of females actually selected to serve on the jury is unknown, since that is not reflected in the record. Yet, we can divine that prior to Kelly exercising his strikes, 15 of the first 21 members of the venire were female. After he exercised his strikes, nine of the 15 remained (assuming Patti struck none). So, it is reasonable to deduce that a number of females were available to sit on and actually sat on the jury panel which tried the dispute.

3. We note that aside from the unsworn statements of Patti's trial counsel, little evidence was offered to support Patti's claim of discrimination.

The jury cards were never tendered into evidence, nor were the juror lists used by the litigants. Indeed, nothing of record even names the jurors who were actually selected to sit as the fact finders. And, counsel's own utterances about the jurors cannot be considered evidence given that they were unsworn. *See Goode v. Shoukfeh*, 915 S.W.2d 666, 671 (Tex.App.—Amarillo 1996), *affirmed*, 943 S.W.2d 441 (Tex. 1997) (stating that counsel's unsworn comments are not evidence). In sum, evidence touching upon the issue in question is quite sparse.

argument consisted of nothing more than an undeveloped conclusion. It similarly lacked citation to legal authority. So, being contrary to the rules of procedure, it was waived. *Trenholm v. Ratcliff,* 646 S.W.2d 927, 934 (Tex.1983); *see* Tex.R.App. P. 38.1(h) (requiring the litigant to support his argument with citation to authorities).

Second, the failure of Kelly to provide a justification was explained. As reiterated by the trial court, Kelly left his notes in the courtroom while the hearing was occurring in chambers. Thus, he could not recall the reason for his actions. This is some explanation for his inability to recall why he struck venire member 16, especially given the fact that the hearing was held in chambers while Kelly's notes were located in the courtroom.

■ Third, while some authority indicates that the mere failure to explain one strike warrants automatic reversal, *see, e.g., Wright v. State,* 832 S.W.2d 601, 604–605 (Tex.Crim. App.1992) (en banc), other authority does not. *See, e.g., Salinas v. State,* 888 S.W.2d 93, 98–99 (Tex.App.—Corpus Christi 1994, pet. ref'd), *cert.. denied,* 516 U.S. 823, 116 S.Ct. 85, 133 L.Ed.2d 42 (1995). Moreover, in reversing the judgment because one explanation was not given, the *Wright* court unduly stressed procedure over form. *Batson* and its progeny declared that invidious discrimination will not be condoned in the selection of jurors. The task the Supreme Court imposed upon the trial court as a result of *Batson* was to determine whether its declaration was violated. To facilitate resolution of the matter, it developed the three prong test discussed above. The test is of importance, no doubt, for it helps guide the court through the *Batson* analysis. But, no court ever intended that it be applied rigidly, mechanistically, or ritualistically. *See Dewberry v. State,* 776 S.W.2d 589, 591 n. 2 (Tex.Crim. App.1989) (quoting *Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957, 967 (1978) (cautioning against such an application)).

In truth, the three step process is merely an analytical construct to assist the litigants in viewing their respective burdens of production and proof in the proper context. Just as in any other civil matter, it serves to inform them that the complainant must present a prima facie case before his opponent will be pressed into responding. Should any defendant fail to respond in a general civil suit, the plaintiff is not magically relieved of having to ultimately persuade the fact finder that he proved his case; the plaintiff does not *ipso facto* win. Rather, the fact finder still has the duty to weigh not only the plaintiff's evidence but all the evidence of record (including contradictory evidence), decide which to hold credit-worthy, and ultimately rule on the pivotal questions. No less should be true of a *Batson* attack.

■ The *Batson* movant always has the burden to persuade the court that discrimination occurred. *Goode v. Shoukfeh,* 943 S.W.2d at 445–46. If the movant presents a prima facie case and the opponent fails to completely respond to it, nothing should preclude the court from assessing the other evidence of record in determining whether the movant was sufficiently persuasive. *See Salinas v. State,* 888 S.W.2d at 98 (wherein the court refused to reverse because the overall record did "not suggest that rights of the defendant, the excluded jurors or the community at large were violated"). If the other evidence indicates that the peremptory strike was not invidiously exercised, even though little or nothing was said about why it was made, the court should be allowed to so find.

This is not to say that the failure of the opponent to justify his omission should be ignored. Quite the contrary, it alone could stand as sufficient evidence to support a trial court's decision sustaining a *Batson* challenge. But, it alone is not enough to render a decision to overrule the challenge automatically reversible, especially when the failure to provide a justification is rationally explained and the record contains evidence supporting the conclusion that no one impermissibly discriminated against a potential juror. To hold otherwise would be to do that which other courts have cautioned against; it would be tantamount to requiring that the three pronged tests be applied ritualistically, mechanistically, and rigidly. And, that is where *Wright* was wrong and *Salinas* was right.

Accordingly, we affirm the judgment rendered below.