**AFFIRMED; Opinion Filed May 27, 2015.**



**In The**

# Court of Appeals
# Fifth District of Texas at Dallas

**No. 05-14-00527-CR**
**No. 05-14-00528-CR**

**EVERETT O'NEAL MAJORS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 6**
**Dallas County, Texas**
**Trial Court Cause Nos. F-1358320-X & F-1358321-X**

## MEMORANDUM OPINION

Before Justices Myers, Evans, and O'Neill[1]
Opinion by Justice Evans

After a jury trial, Everett O'Neal Majors was convicted of possession of marijuana in an amount of five pounds or less but more than four ounces and possession with intent to deliver cocaine in an amount of four grams or more but less than two hundred grams. For each offense, there was an affirmative finding of a deadly weapon. In this appeal, he raises four issues generally complaining (1) the trial court erred in overruling his *Batson* challenge[2], (2) he received ineffective assistance of counsel, and (3) there was insufficient evidence to support the deadly weapon findings and his conviction for possession of cocaine with intent to deliver. We affirm.

---

[1] The Hon. Michael J. O'Neill, Justice, Assigned

[2] *Batson v. Kentucky*, 476 U.S. 79 (1986).

On July 24, 2013, Dallas police officers executed a "no-knock" search warrant for a house on Morrell Avenue in Dallas. They obtained entry to the house by using a shotgun with special rounds to break the locks of steel cages on an exterior side door. They also used a slammer to breach the front door and then pulled off the door and the cage using an armored personnel carrier with 25-foot nylon webbing straps. Once inside the house, officers found cages on the doors to the kitchen that isolated the kitchen area from other areas of the house. One suspect was immediately apprehended near a table in the kitchen. Appellant was apprehended close to the entry way of a bedroom as he moved quickly from the kitchen. Appellant had marijuana on his person when apprehended. A third individual ran to the bathroom where he was apprehended after attempting to flush a bag containing what was later identified as cocaine down the toilet.[3] Among other things, a search of the living room revealed ammunition, a large bag of marijuana, and individually packaged marijuana. In the back, underneath the house, the police recovered a duffle bag containing a loaded rifle, two loaded handguns, and ammunition.

Appellant was charged with possession of marijuana in an amount of five pounds or less but more than four ounces and possession with intent to deliver cocaine in an amount of four grams or more but less than two hundred grams. He plead guilty to the marijuana offense but not guilty to the cocaine offense. A jury found appellant guilty of the cocaine offense and found appellant used or exhibited a deadly weapon in both offenses. The jury also found the two felony enhancement paragraphs true and sentenced appellant to forty-nine years' imprisonment on the cocaine offense and twenty-five years' imprisonment on the marijuana offense.

In his first issue, appellant complains of the trial court's denial of his *Batson* challenge to five of the State's peremptory challenges. Appellant complains that the State used five of its challenges to exclude the only five panel members that were the same race as appellant,

---

[3] A minor female was apprehended in a closet but not charged with an offense.

specifically jurors ten, sixteen, thirty-six, thirty-eight, and forty-four.  When we review a trial court's ruling on a *Batson* challenge, we "should not overturn the trial court's resolution of the *Batson* issue unless [we] determine[] that the trial court's ruling was clearly erroneous." *Blackman v. State*, 414 S.W.3d 757, 765 (Tex. Crim. App. 2013) (citing *Herron v. State*, 86 S.W.3d 621, 630 (Tex. Crim. App. 2002)); *see Davis v. State*, 329 S.W.3d 798, 815 (Tex. Crim. App. 2010) ("The trial court's determination is accorded great deference and will not be overturned on appeal unless it is clearly erroneous.").  We review the entire record of voir dire, *see Blackman*, 414 S.W.3d at 765, and do so in the light most favorable to the trial court's ruling. *Davis*, 329 S.W.3d at 815.

The first step of a *Batson* challenge begins when a challenger makes a *prima facie* showing of discrimination in the opponent's exercise of its peremptory strikes.  *See Davis*, 329 S.W.3d at 815 (citing *Herron,* 86 S.W.3d at 630).  Then, in the second step, the burden shifts to the party making the strikes to articulate race-neutral explanations for its strikes.  *See Guzman v. State,* 85 S.W.3d 242, 246 (Tex. Crim. App. 2002).  Once the party making the strikes has articulated a race-neutral explanation, the burden shifts back to the challenging party to show that the explanations are a pretext for discrimination.  *See Davis*, 329 S.W.3d at 815.  The trial court must then determine whether the challenging party has carried its burden of proving discrimination.  *Id.*

When a party challenges an opponent's strike on the basis of purposeful discrimination, and the trial court proceeds immediately to the second step by inquiring of the proponent whether he had a non-discriminatory purpose, a reviewing court is to assume that the opponent has satisfied his obligation to make a prima facie case of purposeful discrimination and address only the second and third steps.  *Watkins v. State*, 245 S.W.3d 444, 447 (Tex. Crim. App. 2008).  At the second step of the analysis, there is no fact-finding to be done.  The trial court simply accepts the explanation for the strike at face value and determines whether it is a reasonably specific discrimination-neutral reason. *See Purkett v. Elem*, 514 U.S. 765, 768 (1995).  A discrimination-neutral explanation means any

explanation based on something other than race, gender, or ethnicity. *See id.*; *Guzman*, 85 S.W.3d at 245 (a litigant may not exercise a peremptory challenge based on the juror's gender . . ., ethnicity, or race") (citing *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127 (1994) (gender); *Hernandez v. New York*, 500 U.S. 352 (1991) (ethnicity); *Batson*, 476 U.S. at 100 (race)). Unless a discriminatory intent is inherent in the explanation, the reasons offered will be deemed discrimination-neutral. *See Purkett*, 514 U.S. at 768; *see also Fritz v. State*, 946 S.W.2d 844, 847 (Tex. Crim. App. 1997) (discriminatory intent inherent in reason for peremptory challenge that males under the age of thirty would identify with opponent). "Thus, it is only at step three 'that the persuasiveness of the justification becomes relevant—the step in which the trial court determines whether the opponent of the strike has carried his burden of proving purposeful discrimination.'" *Guzman*, 85 S.W.3d at 246 (quoting *Purkett*, 514 U.S. at 768).

At the *Batson* hearing, the prosecutor provided the following racially neutral grounds for his strikes, based in large part on the prospective jurors' questionnaire responses. For juror ten, the prosecutor focused on the facts that (1) his son and cousin had been in the penitentiary, (2) his ability to judge the case would be affected by family members that had bad experiences with law enforcement, (3) that he or his family members had been addicted to controlled substances, (4) he thought marijuana should be legalized; and (5) he identified himself as a liberal.

For juror sixteen, the prosecutor referred to a public lewdness case from 1985 that had been dismissed and a credit card abuse case for which he received two years' probation. Although the juror noted he previously worked for the DeSoto Police Department, the prosecutor surmised that his employment with them might have ended poorly and therefore he could have animosity to law enforcement. The juror also indicated that he did not believe in capital punishment.

With respect to juror number thirty-six, the prosecutor noted that in response to the State's question about whether anyone had a job that would prevent them from being able to pay attention, she stated she worked a shift from 2:00 p.m. to 10:30 p.m. She also indicated that three people related to her had been sentenced or charged with drug offenses, and that vision problems might prevent her from giving full attention to the trial. Further, she left blank the section on the jury questionnaire asking about her feelings towards law enforcement.

For juror thirty-eight, the prosecutor noted she had a son serving a life sentence for a drug offense and although she said she could be fair, the prosecutor questioned whether that would affect her ability to judge the case. She also identified herself as very liberal and the prosecutor noted a concern she might attempt to legislate from the jury box.

With respect to juror number forty-four, the prosecutor relied on his testimony that he did not trust the criminal justice system and thought it was biased. He also indicated both he and his wife were falsely arrested and then released. He had negative feelings towards police and the war on drugs and rated the police in his community as "fair." He also said his experience with police would affect his ability to be fair and impartial. The appellant presented no argument or evidence in response to the prosecutor's race neutral explanations to establish that the prosecutor's explanations were a pre-text for discrimination. Based on the record before us, appellant did not to meet his burden of proving intentional discrimination. *See Purkett*, 514 U.S. at 768; *Williams v. State*, 301 S.W.3d 675, 689 (Tex. Crim. App. 2009). Accordingly, we conclude the trial court did not abuse its discretion in overruling appellant's *Batson* objection. *See Davis*, 329 S.W.3d at 815, 817. We resolve appellant's first issue against him.

In his second issue, appellant asserts he received ineffective assistance of counsel because his attorney failed to move to suppress "the search of the appellant's cell phone to determine whether appellant's cell phone had been searched prior to the issuance of the search warrant." To prevail on

an ineffective assistance of counsel claim, appellant must establish both that his trial counsel performed deficiently and that the deficiency prejudiced him. *State v. Morales*, 253 S.W.3d 686, 696 (Tex. Crim. App. 2008) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). With respect to the first prong, the record on appeal must be sufficiently developed to overcome the strong presumption of reasonable assistance. *See Thompson v. State*, 9 S.W.3d 808, 813–14 (Tex. Crim. App. 1999). Because counsel's performance is measured against the state of the law in effect during the time of trial, an ineffective assistance claim cannot be based on unsettled law. *See Ex parte Welch*, 981 S.W.2d 183, 184 (Tex. Crim. App. 1998) (en banc). Absent an opportunity for trial counsel to explain his actions, we will not conclude his representation deficient "unless the challenged conduct was so outrageous that no competent attorney would have engaged in it." *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001). Texas procedure makes it "'virtually impossible'" for appellate counsel to present an adequate ineffective assistance claim on direct review. *See Trevino v. Thaler*, 133 S. Ct. 1911, 1918 (2013) (quoting *Robinson v. State*, 16 S.W.3d 808, 810–11 (Tex. Crim. App. 2000)). This is because the inherent nature of most ineffective assistance claims means that the trial court record "will often fail to 'contai[n] the information necessary to substantiate' the claim." *Id*. (quoting *Ex parte Torres*, 943 S.W.2d 469, 475 (Tex. Crim. App. 1997) (en banc)). As a result, the better procedural mechanism for pursuing a claim of ineffective assistance is almost always through writ of habeas corpus proceedings. *Freeman v. State*, 125 S.W.3d 505, 506 (Tex. Crim. App. 2003).

Here, the record is silent as to trial counsel's reasons for not filing a motion to suppress the photos recovered from appellant's phone. Because appellant has failed to rebut the presumption of counsel's competence under the first prong, we need not consider the requirements of the second prong. Moreover, to the extent appellant relies on the recent

Supreme Court case of *Riley v. California,* 134 S. Ct. 2473 (2014) to support his ineffective assistance claim, we note that decision was not issued until after the trial had concluded in this case.[4] Trial counsel is not ineffective for not correctly foreseeing what the law is later declared to be. *See Ex parte Chandler*, 182 S.W.3d 350, 358–59 (Tex. Crim. App. 2005) (counsel's performance measured by state of law in effect during trial and counsel not ineffective where claimed error based on unsettled law). We resolve appellant's second issue against him.

In his third and fourth issues appellant challenges the sufficiency of the evidence to support his conviction for possession of cocaine with intent to deliver and the affirmative deadly weapon findings. In reviewing the sufficiency of the evidence, we view all the evidence in the light most favorable to the verdict, and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 313 (1979); *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). We assume the fact finder resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the trier of fact's determinations of witness credibility and the weight to be given their testimony. *Brooks*, 323 S.W.3d at 899.

With respect to the deadly weapon findings, appellant argues that because the weapons in question were found in a duffle bag outside of the house and inaccessible to him in the kitchen, where the police first saw him, he could not have used or exhibited the weapons during the offense. Section 3g(a)(2) of article 42.12 of the code of criminal procedure authorizes the entry of a deadly weapon finding when it is shown that appellant used or exhibited a deadly weapon, or he was a party to the offense and knew that a deadly weapon would be used or exhibited.

---

[4] *In Riley*, the Supreme Court held that the search incident to arrest exception to the warrant requirement does not extend to a search of data on a lawfully seized cell phone. *Id*. at 2485 (warrant generally required before such a search, even when phone seized incident to arrest).

TEX. CODE CRIM. PROC. ANN. art. 42.12 (3)g (a)(2) (West Supp. 2014). As utilized in the statute, "use" means any employment of a deadly weapon, including simple possession, if it facilitates the associated felony. *See Coleman v. State*, 145 S.W.3d 649, 652 (Tex. Crim. App. 2004) (quoting *Patterson v. State*, 769 S.W.2d 938, 941 (Tex. Crim. App. 1989)).

Here, the evidence was sufficient for a jury to conclude that the guns found in the duffle bag outside facilitated appellant's possession and distribution of the narcotics. The weapons were loaded and had fresh oil on them indicating that they were being maintained for use. Moreover, police officers testified that the weapons were not hidden and could have been accessed by someone in the kitchen (like appellant) within five to ten seconds. Additional ammunition matching the weapons in the duffle bag was located in the living room, where the marijuana was found, and in the bathroom. Moreover, drug paraphernalia and drugs were found all over the house and evidence that the house was being used solely for the sale of drugs. Based on the evidence before it, the jury could have concluded that the guns protected or facilitated appellant's possession and distribution of narcotics. We resolve appellant's third issue against him.

In his fourth issue, appellant contends the evidence at trial did not establish sufficient links between him and the cocaine to support a conviction for possession with intent to deliver. He argues that, at best, the evidence showed merely that he was present at the location when the search was executed. We disagree.

To establish unlawful possession of a controlled substance with intent to deliver, the State must prove that appellant exercised custody, control, management, or care of the controlled substance, intended to deliver the controlled substance to another, and knew the matter possessed was contraband. *Nhem v. State*, 129 S.W.3d 696, 699 (Tex. App.—Houston [1st Dist.] 2004, no pet.). The evidence may be either direct or circumstantial, but must show the appellant's

–8–

connection to the drugs was more than just fortuitous. *See Evans v. State*, 202 S.W.3d 158, 161–62 (Tex. Crim. App. 2006). Although appellant's mere presence where drugs are found, without more, is insufficient to establish possession, appellant's proximity to the drugs combined with other evidence can prove possession beyond a reasonable doubt. *See id*. at 162.

A nonexclusive list of factors that can be sufficient either singly or in combination, to establish possession of contraband include: (1) presence when search is conducted; (2) whether the contraband is in plain view; (3) proximity to and the accessibility of the contraband; (4) the accused being under the influence of narcotics when arrested; (5) possession of other contraband or narcotics when arrested; (6) incriminating statements made by the accused when arrested; (7) an attempt to flee; (8) furtive gestures; (9) an odor of contraband; (10) the presence of other contraband or drug paraphernalia; (11) whether the accused owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) possession of a large amount of cash; (14) conduct indicating a consciousness of guilt; and (15) the quantity of the contraband. *See Evans*, 202 S.W.3d at 162 n.12; *McQuarters v. State*, 58 S.W.3d 250, 259 (Tex. App.—Fort Worth 2001, pet. ref'd). The number of linking factors is not as important as the logical force they create to support an inference of knowing possession of contraband. *Taylor v. State*, 106 S.W.3d 827, 831 (Tex. App.—Dallas 2003, no pet.).

Factors we consider in determining whether an accused had intent to deliver include: (1) the nature of the location at which appellant was arrested, (2) the quantity of the controlled substance in appellant's possession, (3) the manner of the packaging of the drugs, (4) the presence or absence of drug paraphernalia, (5) the appellant's possession of large amounts of cash, and (6) appellant's status as a drug user. *See Moreno. v. State,* 195 S.W.3d 321, 325 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd).

Numerous witnesses testified that the house where the search occurred and appellant was apprehended was a drug house. Throughout the house, police found cocaine and marijuana, ammunition, and drug paraphernalia including digital scales, a hot plate, lighters, and new crack pipes. A detective testified that the value of the cocaine found was about $3,000 to $4,000 and the value of the marijuana was $1,000. Freshly oiled, loaded guns were found just outside the house and easily accessible to those inside. As the police entered the house, appellant occupied the kitchen, which was isolated from the other parts of the house with caged doors. A pill bottle with appellant's daily diabetes medicine was found in a kitchen cabinet. At the time he was apprehended, appellant had a small amount of marijuana in his pocket and was not wearing shoes. Inside a pair of tennis shoes found in a bedroom, the police found crack cocaine packaged into individual baggies along with some money. Based on the evidence before it, a rational jury could have found that appellant possessed the cocaine found in the house with the intent to deliver to another. We resolve appellant's fourth issue against him.

Having concluded all of appellant's issues lack merit, we affirm the trial court's judgments.

/ David Evans/
DAVID EVANS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
140527F.U05

–10–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

EVERETT O'NEAL MAJORS, Appellant

No. 05-14-00527-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 6, Dallas County, Texas
Trial Court Cause No. F-1358320-X
Opinion delivered by Justice Evans, Justices
Myers and O'Neill participating.

     Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered this 27th day of May, 2015.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

EVERETT O'NEAL MAJORS, Appellant

No. 05-14-00528-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 6, Dallas County, Texas
Trial Court Cause No. F-1358321-X
Opinion delivered by Justice Evans, Justices Myers and O'Neill participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 27th day of May, 2015.